Francine M. Talmage, Appellant, v. Union Central Life Insurance Company, Appellee.

Gen. No. 41,987.

624

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed July 3, 1942. Rehearing denied September 18, 1942.

HOPKINS, SUTTER, HALLS & DEWOLFE, of Chicago, for appellant; DONALD J. DEWOLFE and T. EUGENE FOSTER, both of Chicago, of counsel.

FEIGEN & FEIGEN and REUBEN FREEDMAN, all of Chicago, for appellee; ARTHUR P. FEIGEN and° REUBEN FREEDMAN, both of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

The plaintiff, Francine M. Talmage, brought suit at law against defendant, The Union Central Life Insurance Company, on a life insurance policy No. 1305698, issued by defendant. Neither party filed a jury demand, and accordingly, the case was tried by the court and the court made a finding in favor of defendant, overruled plaintiff's motion to vacate the finding, overruled plaintiff's motion for a new trial and entered judgment in favor of defendant. This appeal is from that judgment.

As to the pleadings, it appears that defendant filed a motion to strike the plaintiff's complaint. The trial court entered an order striking paragraph 6 of plaintiff's complaint. Thereupon plaintiff filed an amended paragraph 6, after which amendment the trial court entered an order overruling defendant's motion to strike the plaintiff's complaint and amendment thereto. Defendant filed its answer on February 27,

1940. Plaintiff filed a reply to defendant's answer. On January 15, 1941, the defendant, having first obtained leave of court, filed an amendment to paragraph 25 of its answer. In this amendment "said paragraph, as amended," was set forth. Plaintiff filed a motion to strike paragraph 25 of defendant's answer as amended and the trial court entered an order striking the amendment to defendant's answer. It is the contention of plaintiff that by filing an amendment to paragraph 25 of its answer the defendant deleted the original paragraph 25 and that when, on February 8, 1941, the trial court entered an order striking the amendment to paragraph 25 of the answer, both the original paragraph 25 and the amendment thereto were stricken from defendant's pleadings. The defendant insists that the original paragraph 25 remains as a part of its pleadings.

Plaintiff's claim is based upon a life insurance policy (No. 1305698) issued by defendant on April 25, 1938, insuring the life of Ernest F. Talmage, the former husband of plaintiff, and wherein plaintiff is named as beneficiary. Plaintiff was married to Ernest F. Talmage on October 15, 1911, of which marriage two children were born; the oldest being Dr. Henry E. Talmage, who was a witness in this case, and the other, Ernest F. Talmage, Jr., who is presently an officer in the Air Corps. In 1934 the plaintiff and Ernest F. Talmage were living together as husband and wife in Evanston, Illinois. In that year Ernest F. Talmage deserted plaintiff and from that time lived separate and apart from her. Thereafter until on or about May 1, 1938, plaintiff continued to reside with her sons in Evanston. In March 1938, Dr. Henry E. Talmage went to live in Clinton, Illinois, and on or about May 1, 1938, when the lease on her Evanston apartment had expired, plaintiff went to live with her son in Clinton. In April of 1941 Dr. Henry E. Talmage moved to Decatur, Illinois, and the plaintiff

went there to live with him, and was living there at the time of the trial. In other words, since at least 1937 the plaintiff has always lived with her son, Dr. Henry E. Talmage, except for brief periods when she was away from him only temporarily, the longest of these periods being a three months' stay in Waukesha, Wisconsin, in the Spring of 1939, where she went to be with her youngest son, who was there in college. Plaintiff never resided at nor maintained post office addresses at 347 N. Pulaski, Chicago, Illinois, or 6745 S. Chappell avenue, Chicago, Illinois. Those were her former husband's addresses.

In 1936, Ernest F. Talmage brought a suit for divorce against plaintiff, who filed a cross complaint in the proceeding. The divorce proceeding came on for hearing on April 20, 1938. The divorce decree indicates that Ernest F. Talmage offered no testimony and judicial notice may be taken of the fact that under such circumstances a divorce proceeding in the superior court of Cook county is considered as a default matter, and is, in accordance with the provisions of section 3 of rule 60 of the superior court of Cook county. The next day, April 21, 1938, Ernest F. Talmage filed with the defendant an application for life insurance which resulted in the issuance of policy No. 1305698, the policy involved in this case. The application was taken by and is in the handwriting of John B. Wood, an employee of the defendant, attached to defendant's Chicago office, who testified both on behalf of plaintiff and defendant. From his testimony it appears that he had known Ernest F. Talmage for about two or three years before writing the application for this policy; that Mr. Talmage, when he applied for the policy, told Mr. Wood that it was necessary for him to obtain $5,000 of insurance in favor of his wife in a divorce proceeding; that there was no address given in the application for the plaintiff, as beneficiary; that he (Wood) had no dealings

or conversation with either the plaintiff or her attorneys at the time of the issuance of the said policy; that the application is in Mr. Wood's handwriting and that he got the information contained therein from Ernest F. Talmage. The application itself reveals that Ernest F. Talmage was to be the insured and that Francine M. Talmage was to be the primary beneficiary, and that the relationship of Francine M. Talmage to Ernest F. Talmage was that of "divorced wife." The application stated "Ownership and privilege to change the beneficiary shall vest in the insured and primary beneficiary jointly."

At the time at which the application for policy No. 1305698, and thereafter, there was in force and effect section 234 of the Illinois Insurance Code (Ill. Rev. Stat. 1939, ch. 73, sec. 846 [Jones Ill. Stats. Ann. 66.909]) which provides in part as follows;

"No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium, installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace. . . ." The defend-

ant was and is a life insurance company doing business in Illinois, and its Illinois business was governed by the provisions of the Illinois Insurance Code.

After examining the application, the defendant issued the policy in question, containing the following provisions;

"A3. Rights of Primary Beneficiary. During the lifetime of the primary beneficiary this policy is without the privilege of change of beneficiary except with the written consent of the said primary beneficiary and all rights and privileges reserved to the insured or the owner of the policy are vested in the insured and said primary beneficiary jointly, except that the insured reserves the right to withdraw in cash all dividends and the surrender value of additions purchased by dividends.

"A4. Primary Beneficiary. The net sum payable on the death of the insured shall be paid to Francine M. Talmage, his former wife, if living at the death of the insured, otherwise to the executors, administrators or assigns of the insured." At the same time the Chicago office of the company prepared a record card concerning this policy, which record is in evidence. This card contains the following notation: "Bene.— Francine—Former wife." This notation obviously means—it is urged—that the beneficiary was Francine M. Talmage, the former wife of insured, and that, therefore, there can be no question that from the beginning, and before it issued this policy, the defendant was fully advised of the relationship between the plaintiff and Ernest F. Talmage.

The first quarterly premium on the policy was paid on April 29, 1938, and presumably the policy was delivered to Ernest F. Talmage. Having obtained the policy, the attorneys in the divorce proceedings were able to prepare the divorce decree, which made specific reference to policy No. 1305698. The decree was entered on May 13, 1938. The attorneys for Francine

M. Talmage in the divorce proceedings then obtained possession of the policy, and after having waited a few days until they could obtain a certified copy of the divorce decree, on May 18, 1938, they sent the certified copy of the divorce decree and the insurance policy to plaintiff at 117 W. Jefferson street, Clinton, Ill., together with a letter in which they stated "We would suggest that you write to the home office of such insurance company and request them to notify you promptly in the event premiums are not paid when due, so that you may make sure the policy does not lapse and may compel payment of the premiums in time to avoid any such lapsing."

After receiving the letter of May 18, 1938, from her attorneys, Mrs. Talmage discussed the matter with her son, Dr. Henry E. Talmage, and he, on her behalf, wrote a letter to the home office of the defendant stating that his mother was no longer a resident of Evanston and that she was living with him in Clinton, Ill. He stated in the letter that if there were any defaults, or nonpayments on premiums, the company should notify his mother at the address in Clinton. Postage was affixed to this letter, and it was placed in an envelope addressed to The Union Central Life Insurance Company, Cincinnati, Ohio, and was mailed from the Post Office in Clinton, Illinois. Witness Brading testified on behalf of defendant that from an examination of the company's home office records he could find no record of the receipt of the letter. No witness testified that the letter had never been received at the home office of defendant.

On June 21, 1938, Ernest F. Talmage went to the Chicago office of defendant and talked with Mr. John P. Wood about changing the address to which premium notices were to be sent in connection with the policy in question. Talmage told Wood that he left the employ of the Braeburn Alloy Steel Company and that his new mailing address was 6745 S. Chappell

avenue, Chicago, Illinois, but did not tell Mr. Wood that that was also the address of Francine M. Talmage, and Wood testified that he would assume that that was not her address and that the fact of the matter is that he knew that it was not. Wood turned this report into the desk in his office and it was there taken care of, and the address on the record card was changed from 347 N. Pulaski road to 6745 S. Chappell avenue. Plaintiff had no knowledge concerning this change of address and the defendant was never notified that 6745 S. Chappell avenue, Chicago, Illinois, was the address of plaintiff.

The second quarterly premium was due on the policy on July 25, 1938. Notice of his fact was sent to Ernest F. Talmage, Braeburn Alloy Steel Corp., 347 N. Pulaski road, Chicago. Mr. Talmage received this notice and paid the premium. A notice was also mailed to Francine M. Talmage, Braeburn Alloy Steel Corp., 347 N. Pulaski road, Chicago, Illinois. Mrs. Talmage neither resided at nor maintained a mailing address at 347 N. Pulaski road, and accordingly, never received the notice nor heard anything about it. Her former husband retained both notices among his own personal papers where they were found after his death.

The third quarterly premium was due on October 25, 1938, notice of which was sent to Ernest F. Talmage at 6745 S. Chappell avenue, Chicago. Mr. Talmage received this notice and paid the premium. A notice was also mailed to Francine M. Talmage at 6745 S. Chappell avenue, Chicago, which notice she never received. Her former husband retained both notices among his personal papers where they were found after his death.

The fourth quarterly premium was due on January 25, 1939, and notice was sent to Ernest F. Talmage at 6745 S. Chappell avenue, Chicago, Illinois. Mr. Talmage received this notice, but failed to pay the pre-

mium according to defendant's statement. A notice was also mailed to Francine M. Talmage at 6745 S. Chappell avenue, but Mrs. Talmage neither residing nor maintaining an address at that place, never received the notice nor heard anything about it. The notice to her was found among her former husband's papers after his death.

Subsequently and within the 31-day period of grace, defendant sent a final notice to Ernest F. Talmage at 6745 S. Chappell avenue, which he received and retained among his personal papers where it was found after his death. The company made no attempt to send a similar notice to the plaintiff who was a joint owner of the policy.

Under date of February 27, 1939, the Chicago agency of the defendant sent a letter to Ernest F. Talmage at 6745 S. Chappell avenue, notifying him that the grace period for the payment of the premium due January 25, 1939 had expired, but that he could reinstate the policy on or before March 2, 1939 without submitting evidence of insurability, but no similar notice was sent to the plaintiff.

About two weeks thereafter, on March 15, 1939, the insured, Ernest F. Talmage, was struck by an automobile and as a result of injuries thereby sustained died on March 17, 1939. His son, Dr. Henry E. Talmage was appointed administrator of his estate, and in this capacity took charge of his father's papers and found the notices sent by defendant.

Shortly after the death of Mr. Talmage, or possibly just before his death, the plaintiff went with her sons to the Chicago office of the defendant to inquire about the insurance represented by policy No. 1305698 and the insurance represented by a certain other policy in which her son had an interest. It was then that she was told by a representative of defendant, Mr. Hubertz, that the company took the position that policy No. 1305698 had lapsed because the premium due

January 25, 1939 had not been paid. This appears to have been the first time that plaintiff was aware that the premium was unpaid and that the defendant took the position that the policy had lapsed.

On March 20, 1939, just three days after the death of Ernest F. Talmage, and shortly after the plaintiff had been advised by the defendant that it was the defendant's view that policy No. 1305698 had lapsed, the plaintiff's attorneys sent a letter to defendant claiming that plaintiff had an interest in policy No. 1260210, issued by defendant. In this letter was inclosed an affidavit executed by plaintiff under date of March 20, 1939, which set forth the basis of her claim to a portion of the proceeds of policy No. 1260210. The beneficiaries named in said policy No. 1260210 were Ernest F. Talmage, Jr. and one Lydia V. Frye, who was alleged to be a married woman with whom the insured, Ernest F. Talmage, cohabited and maintained illicit relations. There thus arose a dispute as to who was entitled to the proceeds of policy No. 1260210. The defendant was not concerned with the matter of the distribution of the proceeds of policy No. 1260210 except in so far as it was necessary that defendant be released from its liability under policy No. 1260210, regardless of who was entitled to the proceeds of said policy. Accordingly, on April 25, 1939, the defendant paid in to the clerk of the superior court of Cook county the sum of $19,523.35 for distribution to the claimants under the defendant's counter-complaint of interpleader filed in case No. 39S 3026 involving policy No. 1260210.

On April 7, 1939, about three weeks after the death of Ernest F. Talmage, and about three weeks after the plaintiff had conferred with the defendant's representative concerning the status of policy No. 1305698 and policy No. 1260210, the defendant mailed out notices to the effect that a quarterly premium was due on policy No. 1305698 on April 25, 1939, and that a divi-

dend in the amount of $5.66 was payable to the insured. No reference was made in these notices to the effect that the premium due January 25, 1939 had not been paid. One of these notices was addressed to Ernest F. Talmage, and the other to Francine M. Talmage, both at 6745 S. Chappell avenue.

In the suit concerning policy No. 1260210, which had theretofore been filed, the plaintiff filed her answer, dated May 9, 1939, to defendant's countercomplaint of interpleader, in which answers he stated that defendant had informed her that policy No. 1305698 had lapsed as to Ernest F. Talmage. She did not admit or allege that policy 1305698 had lapsed *as to her.*

On June 23, 1939, plaintiff filed with defendant a duly executed claim to the proceeds of policy No. 1305698. On July 14, 1939, while the interpleader action involving policy No. 1260210 was pending, plaintiff filed her complaint in this cause (case No. 39S 8320) to recover the proceeds of policy No. 1305698.

On March 6, 1940, while this cause (No. 39S 8320) was still pending, an order was entered in case No. 39S 3026, involving policy No. 1260210, directing the distribution of the proceeds of that policy as follows: to Lydia V. Frye $11,525.00; to Ernest F. Talmage, Jr. $4,880.00; to Francine M Talmage $2,895.00; to Feigen & Feigen, attorneys' fees., $223.35; total $19,523.35. No reference was made in this order of distribution to policy No. 1305698 nor this case, although the law firm of Feigen & Feigen, attorneys for defendant, had appeared in both cases. The defendant was thus never misled by plaintiff or in doubt as to plaintiff's position with reference to policy No. 1305698.

The plaintiff contends that as a condition precedent to forfeiture of the policy, it was necessary under the terms of the policy that plaintiff, as beneficial owner of the policy, be given notice that a premium was due; and calls attention to the rule that forfeitures are not favored by the law, which is, of course, the rule usually

adopted by the courts. The final notice which defendant sent the insured stated;

"The most unpleasant legacy a man can leave his family is—'lapsed policy.' Lying in a safety deposit box a 'lapsed' life insurance policy looks like any other policy, worth perhaps many thousands of dollars, but when the tragic truth is discovered, it is only the cause of added sorrow and disappointment." Upon the rule that a forfeiture is not favored by the law, plaintiff cites the cases of *Knights Templars & Masons Life Ind. Co. v. Vail,* 105 Ill. App. 331, and *Baxter v. Metropolitan Life Ins. Co.,* 318 Ill 369. In the *Knights Templars & Masons Life Ind. Co.* case, the court stated; ". . . Forfeitures are not favored by the law; indeed, it is sometimes said they are so odious that courts will resort to all reasonable methods of interpretation and proceeding for the purpose of avoiding a forfeiture. . . ." And in the *Baxter* case (*supra*), the Supreme Court said; ". . . Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forfeiture for non-payment of the premium such forfeiture will not be enforced. . . ." So, as we consider the questions involved, we must have in mind this rule of law as indicated, and further, that a forfeiture clause in a policy of life insurance is to be construed most strongly against the insurance company. In the case of *Lenkutis v. New York Life Ins. Co.,* 374 Ill. 136, it is stated:

"Supporting his position, plaintiff also places reliance upon the familiar canon of construction that insurance contracts are to be liberally construed in favor of the insured to the end that he will not be deprived of the benefit of insurance for which he has paid, except where the terms of the policy clearly, definitely and explicitly require it. Again, ambiguous provisions or equivocal expressions whereby the insurer seeks to limit its liability will be construed most

strongly against the insurer and liberally in favor of the insured. Where two constructions of the terms of a policy appear equally reasonable the construction will be adopted which enables the· beneficiary to recover his loss. . . .''

When we come to consider the terms of the policy, the next question of importance is plaintiff's contention that she was joint owner of the policy and entitled to the same notice as the insured. From the terms of the policy itself; the plaintiff was the primary beneficiary, and section A-3 of the policy provides in part that: ''All rights and privileges reserved to the insured or the owner of the policy are vested in the insured and said primary beneficiary jointly.'' The application for the policy provides that ''ownership and privilege to change the beneficiary shall vest in the insured and primary beneficiary jointly.'' It would seem from the language used in the policy and in the application therefor, that plaintiff was not the ordinary type of beneficiary named in an insurance policy who can be removed as a beneficiary at the will of insured. It would also seem obvious that the reason for which she was given such rights in the policy was that the policy was taken out pursuant to a settlement reached in the divorce proceedings and incorporated in the divorce decree.

Plaintiff suggests that in the instant case the policy was one in which the premium was not fixed in amount; that dividends were payable on the policy, and, as noted in the application, these dividends were to be applied to the payment of premiums; and that from the premium notice sent out concerning the premium due April 25, 1939, that the company gave notice that a dividend in the amount of $5.66 was payable and was used to reduce the amount of premium due, and cites in support of the suggestions offered the case of *Manhattan Life Ins. Co. v. Smith*, 44 Ohio St. 156. It is urged further that one of the rights and privileges re-

served to the insured under the policy was the right or privilege to receive the premium notices required as a condition precedent to forfeiture of a life insurance policy by section 234 of the Illinois Insurance Code (Ill. Rev. Stat. 1939, ch. 73, sec. 846 [Jones Ill. Stats. Ann. 66.909]); that notices to plaintiff were also required by the clear language of the policy, since plaintiff by the terms of the policy was a joint owner of the policy which provided that "all rights and privileges reserved to the insured or the owner of the policy are vested in the insured and said primary beneficiary jointly"; and that one of the rights thus given to plaintiff was to receive premium notices. Plaintiff urges that as the primary beneficiary she was vested with all rights and privileges reserved to insured (with a minor exception), and since one of the rights or privileges of the insured was the right or privilege to receive premium notices, as set forth above, there can be no question but that the plaintiff was likewise entitled to receive notices. This would be especially true in a case such as in the instant case where the beneficiary, although she was the beneficial owner of the policy, was living separate and apart from insured and where her relationship to the insured was such that it was unlikely for her to have any occasion to see or hear from him. The suggestion is made that defendant recognized that it was obliged to send notices to plaintiff because it actually did send those notices although, of course, they were never received by the plaintiff because of the fact that they were mailed to an improper address and the plaintiff knew nothing about these notices until after the death of insured.

Defendant answers that the plaintiff was not entitled to notice of the due date of premiums under the provisions of the policy, as said policy did not require the giving of such notice to her, and maintains that the plaintiff was not entitled to notice of the due date

of premiums under section 3-A of the policy as contended by her. Defendant submits that the "rights and privileges" vested in the primary beneficiary under section 3-A, do not include the right to notice of premiums due; that there is not the slightest reference therein, either directly or indirectly, to the subject of notice, nor can this be inferred therefrom; and that it is obvious from the context that the purpose of said section of the policy was to prevent the assignment or surrender of the policy, or any change of beneficiary, by the insured, in derogation of plaintiff's rights as the primary beneficiary. The proof shows that defendant actually did mail such notice to plaintiff at the same address to which notices were sent to insured. Defendant contends that such notice was mailed to her "at her last known post office address, in accordance with the instructions in the application and as directed by a subsequent notification of a change of address." Plaintiff's position, however, is that she did not receive them because the defendant sent them to an address which it knew was incorrect.

In the case at bar, the contract of insurance was not with the plaintiff; the application for the policy was made by her husband, who was the only person obligated under the contract to pay the premiums. Moreover, he gave her possession of the policy, and no attempt was made by the insured to surrender the policy in derogation of the beneficiary's interest therein. Defendant states that the plaintiff's contention that the defendant knowingly mailed the notices to an incorrect address is not supported by the evidence, and then points to the evidence in the record concerning the only addresses given to defendant for the purpose of mailing notice.

However, under the circumstances of this case, it is contended by plaintiff that defendant should have ascertained the mailing address of plaintiff at the time

application was made for the policy. It appears from the record that section 4 of the application for the policy in question, which application was taken by John B. Wood, one of the agents of this defendant, reveals that the primary beneficiary, Francine M. Talmage, was the "divorced wife" of the applicant, and that the ownership and privilege to change the beneficiary was to vest in "the insured and primary beneficiary jointly." It would thus seem reasonable to conclude that the beneficiary was not residing with her former husband, and that the address given for the applicant was not the address of the beneficiary. The defendant, however, points to the testimony of Mr. Wood that "No other address was ever furnished to me by anybody other than the addresses that I have testified to for the purpose of sending premium notices." It appears, also, that the insured went to the Chicago office of the defendant and talked with Mr. Wood, on June 21, 1938, about changing the address to which premium notices were to be sent to 6745 S. Chappell avenue, but did not tell Mr. Wood that that was also the address of Francine M. Talmage. Wood testified that he would assume that that was not her address and that the fact of the matter is that he knew it was not.

The evidence in this record shows that the plaintiff notified the defendant of her address, by a letter written for Mrs. Talmage by her son, Dr. Henry E. Talmage. This letter was suggested by the attorney who represented the plaintiff in the divorce proceeding, by his letter of May 18, 1938, suggesting that plaintiff "write to the home office of such insurance company and request them to notify you promptly in the event premiums are not paid when due so that you may make sure that the policy does not lapse and may compel payment of the premiums in time to avoid any such lapsing." At the request of his mother, Henry E. Talmage followed the suggestion of his

mother's lawyer and requested the defendant to notify his mother "if there were any defaults or nonpayment on premiums." For that reason plaintiff could not complain when regular premium notices were not received by her and that is why she felt secure when she didn't receive a notice of default. The letter, written by Dr. Henry E. Talmage, was placed in an envelope addressed to the defendant at Cincinnati, Ohio; a three-cent stamp was placed upon the letter and it was mailed in the post office at Clinton, Illinois; and Mrs. Talmage testified that she was present when the letter was mailed, which testimony was corroborated by Dr. Henry E. Talmage. The only contradictory testimony was the testimony of the witness Brading, who is now in charge of the mail and filing department at defendant's home office in Cincinnati. This witness was not in charge of that department in May of 1938, and in fact was not in charge of that department until March of 1939. He could not and did not testify that defendant never received the letter. He only testified that, as a result of his fairly recent examination of the company's file concerning policy No. 1305698, he could find neither the letter referred to nor any record of its receipt. Plaintiff points out as a significant fact that although the witness came all the way from Cincinnati to testify to this fact he did not bring with him, and the company did not offer in evidence, the defendant's home office file concerning this policy. And there was no evidence of a denial by defendant that the letter was received at the time it was mailed. The rule is that proof of the due mailing of a letter raises the presumption of its receipt, and when the receipt thereof is denied, the only effect is to raise an issue of fact. This question is discussed in Wigmore on Evidence, 3rd ed. 1940, sec. 2519 (vol. IX, p. 431), where it is said;

"(a) Where the issue is whether the letter was *received* by the addressee, it often occurs that the ad-

dressee's testimony *denies* the arrival and receipt. This being some evidence to the negative of the issue, the binding effect of the presumption ends, and the issue goes to the jury to decide upon the weight of the evidence. On this point a Court is occasionally found holding that the uncontradicted testimony of the addressee denying the receipt 'entirely negatives the presumption,' and that therefore the jury cannot find for the receipt; which is, of course, unsound because the jury may not believe the denial, as other Courts have pointed out.'' Therefore, the question of whether the letter was received by defendant is one of fact for the court to pass upon in determining the questions involved. (See also, *Kewanee Nat. Bank v. Ladd,* 175 Ill. App. 151; *Ashley Wire Co. v. Illinois Steel Co.,* 164 Ill. 149; and *Wakenight v. West,* 217 Ill. App. 199.) And as plaintiff points out, the presumption of the receipt of the letter from proof of its due mailing is not rebutted by testimony that it could not be found some years later. The fact is, as we have indicated, that there was no direct denial of the receipt of the letter from any witness having knowledge of the delivery or nondelivery at the time the letter was mailed. (*Hand & Johnson Tug Line v. Canada S. S. Lines,* 281 Fed. 779.)

A further question argued is whether plaintiff abandoned her claim to the proceeds of policy No. 1305698, by any action which she took as to policy No. 1260210. When the order of distribution was entered in case No. 39S 3026 on March 6, 1940, the present suit on policy No. 1305698 was still pending and undisposed of and the same attorneys appeared for defendant in both cases. Yet, the order of March 6, 1940, made no reference whatsoever to policy No. 1305698 nor to this suit which plaintiff had brought against defendant on that policy. It is urged that the obvious reason for this is that plaintiff never intended to nor did she in fact abandon or waive her claim to

the proceeds of policy No. 1305698. It appears from the record that defendant has failed to establish facts from which an intent of the plaintiff to abandon her right under policy No. 1305698 might properly be inferred. Plaintiff suggests that the fundamental error which defendant has made in arguing that the action which plaintiff took with respect to policy No. 1260210 precludes her from asserting her rights under policy No. 1305698 is that the defendant assumes that it was inconsistent for the plaintiff to pursue her claims to the proceeds of both policies and that she was required to make a choice or election between these totally separate and distinct claims; and that such reasoning completely disregards the fact that from the time of the issuance of policy No. 1305698, two separate legal entities became obligated to her and the reasons for their obligations were separate and distinct. There is nothing contained in policy No. 1305698 which imposed upon Ernest F. Talmage, the insured, any duty with respect to plaintiff. She obtained no rights as against him by the issuance of this policy. Likewise, the plaintiff obtained no rights as against Ernest F. Talmage by virtue of the issuance by defendant of policy No. 1260210. Furthermore she obtained no rights as against the defendant by the issuance of policy No. 1260210 because she was not named as a beneficiary therein. The plaintiff's rights with respect to Ernest F. Talmage were established by a decree for divorce entered on May 13, 1938, and this decree specifically provided that Ernest F. Talmage should maintain and keep in force policy No. 1305698 in the amount of $5,000. Without the knowledge or acquiescence of the plaintiff, Ernest Talmage failed to perform the duty imposed upon him by the decree for divorce by failing to pay the premium due on this policy on January 25, 1939. It would thus appear that plaintiff was at liberty to assert her rights against Ernest F. Talmage for his failure to perform his duty

and, accordingly, to claim in equity a portion of the proceeds of policy No. 1260210, but that fact does not prevent plaintiff from taking action against defendant to enforce her rights under policy No. 1305698, which arose from an entirely different source.

It is further urged that the mailing by defendant of the premium notice concerning the premium due on April 25, 1939, operated to keep the policy in force. The fact is that the insured Ernest F. Talmage died March 17, 1939. However, it is unnecessary to pass upon this and other questions before the court, in view of what we have said in this opinion in determining that the court erred in finding and entering judgment for the defendant.

Finally, we are of the opinion that the finding and judgment for the defendant were against the manifest weight of the evidence and should be reversed. This case was tried by the court without a jury, but this fact does not mean that no error could have been made with respect to the finding of fact. In *Feucht v. Clark,* 299 Ill. App..477, the court said on this question;

"The trial was by the court and the finding of the court on review is entitled to the same weight as the verdict of the jury. Of this rule of law we are not unmindful. It is, however, the duty of this court to weigh the evidence. . . ." We are of the opinion, therefore, that the court erred in finding and entering judgment for the defendant, which finding and judgment, we believe, is against the manifest weight of the evidence. The judgment will be reversed and the cause remanded for trial.

*Reversed and remanded.*

Burke, P. J., and Kiley, J., concur.