PHILIP KUPERMAN, d/b/a QUALITY METAL FABRICATION COMPANY, Plaintiff and Counterdefendant-Appellee, *v.* A. R. LEAK, Defendant and Counterplaintiff-Appellant.

(Nos. 58172-3 cons.;

First District (4th Division)—June 12, 1974.

492

Watt & Holland, of Chicago (William E. Holland, of counsel), for appellant.

Warren M. Wexler, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is the consolidation, on appeal, of circuit court cases numbered 70M1-128999 and 70M1-131200. In the first suit plaintiff sought to recover for heating and cooling materials, parts and labor furnished defendant pursuant to a written contract. The second action was brought to recover for heating and cooling materials, parts and labor furnished defendant as extra work incidental to other work being performed for defendant, allegedly at his special instance and request.

The defendant answered both complaints and filed identical counterclaims in both actions seeking damages for defective materials and parts and defective and incomplete work, breach of contract and breach of guaranty and warranty.

Trial was conducted in both cases simultaneously, without a jury. In the first cause plaintiff sought a judgment for $10,666.65 and judgment was entered in its favor for $8,000. In the second cause plaintiff sought a judgment for $7,077.83 and judgment was entered in its favor for $4,000. Judgment was also entered for the plaintiff as counter-defendant on defendant's counterclaims.

The defendant contends that (1) the judgments in both cases are against the manifest weight of the evidence, (2) the trial court manifested bias and prejudice against him, and (3) the rulings on certain objections to evidence were erroneous. He urges that the judgment entered in the first case, No. 70M1-128999, be reversed and the cause remanded for a new trial, and that the judgment in the second case, No. 70M1-131200, be reversed with directions to enter judgment in his favor.

■■ We come now to a consideration of the assignment of errors, and first, to a determination of whether the judgments rendered are manifestly against the weight of the evidence. In this regard, it must be borne in mind that a reviewing court must presume that the trial judge heard sufficient evidence upon which to base his judgment. (*Croft v. Lamkin*, 112 Ill.App.2d 321, 251 N.E.2d 88.) It is, however, the right and duty of the reviewing court to set aside a finding if it is wholly unjustified by the evidence and clearly against the manifest weight thereof. (*Talmage v. Union Central Life Insurance Co.*, 315 Ill.App.623, 43 N.E. 2d 575.) With this in mind, let us examine the facts in the record.

The parties first entered into a written contract on August 30, 1967, wherein plaintiff was to install at a cost of $44,000, all air conditioning, heating, and ventilating systems in defendant's building at 914 East 79th Street in Chicago, following blue prints furnished by defendant. No electrical, plumbing, or trade work, with the exception of refrigeration,

was included in the contract. The building consists of a restaurant on the first floor and a banquet hall on the second floor. In the rear of the building is the Blue Room. The total cost of the building was about $700,000, including the work performed under plaintiff's contract. The plaintiff was paid in full in the amount of $44,000 for the services performed under this original contract.

The work on the second floor pursuant to the contract went almost exactly according to the plans. There was, however, a considerable amount of modification in the first-floor plan. As a result, as the work on the original contract progressed, the parties entered into a second written contract on October 24, 1968, over and above the original contract. Under the terms of this agreement, plaintiff was to provide four units and to heat and air-condition an area in the downstairs rear called the Blue Room, originally intended to be an open parking area, but which the defendant decided to use for restaurant seating. The contract price contained in this second written agreement was $10,000.

There was testimony that, while the work under this second contract was being performed, other modifications were made. Philip Kuperman testified that:

> "beginning in the back area they decided to put in what they called a VIP office which needed heating and air conditioning, and we had to increase the size of the units and run in additional ducts. Mr. Leak's office was made much larger. We had to go from two ton units to three ton units and we had to vent that and there [were] three hot water heaters and we vented those, and later we installed heating units in the vestibules."

He claimed that this work was additional to and not covered under the second contract and amounted to approximately $7350. A claim for payment for this additional work was the substance of plaintiff's second complaint, numbered 70M1-131200. A claim for the balance of payment for performance under the $10,000 written contract was the substance of plaintiff's first complaint, numbered 70M1-128999. The defendant asserted at trial breach of both the original $44,000 contract, for which plaintiff was paid in full, and the subsequent $10,000 contract, and he denied the existence of an oral contract for extra work.

In regard to the alleged oral contract for extras not included in either written contract, for which the trial court entered a judgment of $4,000 for plaintiff, the defendant asserts on appeal that the evidence adduced at trial cannot support a finding of such a contract. We are compelled to agree.

■■ It is fundamental law that there must be an offer and an acceptance to create a contract. There must be mutual assent by the parties.

And the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract. (*Dick v. Halun*, 344 Ill. 163, 176 N.E. 440.) Thus the law assigns to a contractor, seeking to recover for extras, the burden of proving the essential elements. This includes a showing that (a) the work was outside the scope of his contract promises—here the two written contracts, and (b) the extra items were ordered by the owner and he agreed to pay extra sums of money by his words or conduct. (*Watson Lumber Co. v. Guennewig*, 79 Ill.App.2d 377, 389-90, 226 N.E.2d 270, 276.) The court in *Guennewig* further noted:

> "The proof that the items are extra, that the defendant ordered it [*sic*] as such, agreed to pay for it, and waived the necessity of a written stipulation, must be by clear and convincing evidence. The burden of establishing these matters is properly the plaintiff's. Evidence of general discussion cannot be said to supply all of these elements." 79 Ill.App.2d at 390, 226 N.E.2d at 276.

In addition, in view of the fact that changes had already been enumerated in the $10,000 written agreement signed by the parties, it would seem especially incumbent upon the plaintiff-contractor to prove that the owner authorized the additional extras sued for and agreed to pay extra for that work.

Plaintiff's complaint alleged that the extra work was performed at the special instance and request of the defendant. It stated that air conditioning units to be installed by the plaintiff were to be larger than originally contracted for and were to be placed in different positions due to their increased size; that other duct and vent work was requested by the defendant along with additional air conditioning and heating units; and that plaintiff installed the equipment as requested by the defendant and did all the necessary work as to ducts, vents and sheet metal in connection therewith.

After examining the record of trial, we are unable to find that plaintiff established its right to recover for these claimed extras on any basis. It' is undisputed that the original contract for heating and cooling materials in the amount of $44,000 was in writing and was paid. Changes agreed upon were also detailed in a written contract and payment in the amount of $10,000 for that work was designated in that contract. The claim that other additional work and materials were requested by the defendant was not supported by anything in writing, nor was there any testimony offered by plaintiff of any discussion of the details and the charges to be made. There was a complete failure to prove that an offer was made and accepted and that the defendant was apprised that the changes were extra and a fixed amount would be charged, as did

occur in the second written contract for $10,000. When Philip Kuperman was asked on cross-examination whether the second contract was ever modified or amended he said, "I don't recall."

■■ On the other hand the defendant testified that he made no agreements about work to be done by plaintiff other than the two written agreements. He said that he did not know that all of the air conditioning units and heaters were not included in the written contracts. Indeed the record is completely silent regarding the allegation that the defendant was apprised of the fact that these were extras and not included in the written agreements or that he agreed to pay extra for the work, either by his words or conduct. As noted earlier, general discussion cannot be said to supply all of the elements necessary to support a claim for extras (*Watson Lumber Co. v. Guennewig*, 79 Ill. App.2d 377, 226 N.E.2d 270; *Castle Concrete Co. v. Fleetwood Associates, Inc.*, 131 Ill.App.2d 289, 268 N.E.2d 474), and the burden is upon the person asserting the existence of the contract (*Dick v. Halun*, 344 Ill. 163, 176 N.E. 440). This is more particularly true under the special circumstances here. The burden was not met. The judgment rendered in cause number 70M1-131200 in the amount of $4,000 is therefore reversed.

It is also contended that the judgment entered in case number 70M1-128999 is contrary to the manifest weight of the evidence and should be reversed and remanded for a new trial. This action was based on the second written contract in the amount of $10,000 for which plaintiff sought to receive the balance of payment due. It is undisputed that the parties entered into this agreement and the work was done by plaintiff. But defendant asserted that plaintiff breached both this contract and the original $44,000 contract by supplying defective materials and parts and performing defective and incomplete work and that plaintiff also breached guarantees and warranties given to defendant.

There was testimony presented by the defendant that much trouble was encountered with the heating and air conditioning and that the work was incomplete. The defendant, A. R. Leak, testified that the upstairs washrooms have never been air-conditioned or heated and are not properly ventilated. There was no heat in the lobby so warmers had to be installed by him. He said he notified the plaintiff that the heating and air conditioning were not working properly, but no one was ever sent out to correct them. The defendant also stated that every one of the compressors installed by the plaintiff had to be replaced at his own expense and that he was told by the plaintiff that they carried a 5-year warranty. The general contractor testified for the defendant that the heating, cooling, and ventilation was inefficient at various locations in

the building. He admitted, however, that he had no particular background in heating and air conditioning, and he based his efficiency rating only on how comfortable the area felt to him personally. Another witness, a licensed heating and ventilating contractor, who inspected the premises the day before trial, testified for the defendant that the ducts were insufficiently insulated and that certain areas were insufficiently ventilated.

It appears from the record that the work under the initial $44,000 contract was completed sometime in the spring of 1968. The work under the subsequent $10,000 contract was completed in two stages—the heating by November of 1968, and the air conditioning by the following May, 1969. Philip Kuperman testified that adjustments had been made up to that time, and the units were tested when the job was completed and appeared to be working properly. He said the defendant complained of certain defective work regarding the furnace. A minor fire had damaged the humidifier and the coil and Kuperman said he replaced it. He was also called to repair a thermostat which had been knocked off the the wall, causing the heat to stop. And there was a problem in the main banquet room with circulation, which he dealt with by showing the defendant how to operate the equipment properly. The last time Kuperman was on the premises was in November, 1969, when a complaint was made about improper heating in the vestibule. This he determined was attributable to the two vestibule doors being cracked. He installed a heater there. Under the terms of the contract he was responsible for servicing the equipment for 1 year. A 1-year parts warranty given by the manufacturer to him was passed on to his customer, the defendant. There was a 1-year warranty on the compressors.

Marshal Siegal, a wholesale distributor of some of the heating and air conditioning equipment used on defendant's building, testified that he examined the equipment after it was installed and found it to be working properly. He was also present in November, 1969, and could recall only three complaints made by the defendant. One was that a drain line could have been done a little neater. Another was that there was no return air in a small office. A door was undercut to provide a sufficient return in that room. The third item of objection related to the lack of heat in the vestibule. Siegal stated that the factory warranty constituted a 1-year warranty for replacement parts. He specifically asked the defendant if there were any problems with the equipment because it was his responsibility to see that the warranties were fulfilled, but only those three complaints were made.

The trial judge has the duty of sifting the evidence and choosing among conflicting inferences. As a finder of fact he is authorized to draw

reasonable inferences, and he may disbelieve testimony contradicting evidence from which such inferences are drawn. When the evidence is contradictory this court will not substitute its judgment as to the credibility of witnesses for that of the trial court which saw and heard them, and will not disturb the findings unless they are manifestly against the weight of the evidence. (*Wynekoop v. Wynekoop*, 407 Ill. 219, 226, 95 N.E.2d 457, 460.) Manifest means clearly evident, clear, plain; indisputable. (*Schneiderman v. Interstate Transit Lines, Inc.*, 331 Ill.App. 143, 147, 72 N.E.2d 705, 706.) We will not reverse and remand unless an opposite conclusion is clearly apparent. *In re Estate of Meade*, 17 Ill. App.2d 286, 149 N.E.2d 792 (abstract opinion).

■■ The evidence shows that the 1-year warranty on the heating equipment expired in November, 1969, and Kuperman and other witnesses testified that, except as to a few certain objections which were corrected, the system was functioning properly at that time. Although the one year warranty on the air conditioning equipment did not expire until the following May, 1970, the defendant's evidence of defects and inadequacies is rather general, without reference to specific dates or specific equipment. And although defendant testified that complaints were made to the plaintiff and went unanswered, none were made in writing. The court noted that it was difficult to determine whether certain of the problems encountered by the defendant were due to the plaintiff's inadequate installation or to the architect's plans, which were furnished plaintiff by defendant. All in all, we cannot say that a conclusion opposite to the one reached by the trial court is apparent, and we therefore affirm the judgment in case number 70M1-128999 in the amount of $8,000.

■■ We further reject the claim that the judgment does not support the award made by the court or that it was speculative or that interest was improperly included. The court's decision to award $8,000 on plaintiff's claim for $10,666.65 clearly demonstrates that the court weighed the evidence and considered expenditures made by defendant. We think the amount of the judgment is not contrary to the manifest weight of the evidence and in fact is abundantly supported by the evidence.

The defendant further contends that the court, in certain of its comments during trial, manifested bias and prejudice against him. At one point during the testimony of the defendant, the court had occasion to examine certain bills included in a group exhibit of defendant. The bills were being offered to document certain expenditures the defendant made to third parties in repairing the heating and air conditioning systems installed by the plaintiff. Many were unclear as to date and as to what building of the defendant—who operated more than one business—the

repairs related. The judge commented on one dated May 25, 1972, "I don't know how that relates to the guarantee—in 1972," and regarding another, "I believe this is a year after the work was completed." The defendant asserts that these comments demonstrated to him that the judge had a preconceived attitude that the warranty period was only 1 year and not 5 years, before all the evidence was in on the issue.

We find this contention unjustified. These comments were merely an attempt by the judge to sort out an admittedly confused group exhibit, and perhaps help the defendant in organizing his evidence. It is hyperbole to argue that they indicated that his mind was closed to any further proof that the warranty period may have been for 5 years instead of 1 year. In fact the judge, while still examining the defendant's group exhibit, a short time later commented: "And another [bill] from Lee Associates, $132.55, 7/12/69, 6/14/72, *I don't know whether this is a proper charge, in 1972. \* \* \* You still have to resolve the question of the warranty.*" (Emphasis added.) Furthermore, no contention is made that any documents were improperly excluded from evidence. Indeed, because of the confusion regarding some of the bills, the defendant's attorney withdrew the exhibit at that time and offered paid checks instead. We likewise find it extravagant to assert that the judge's fleeting statement, in his final summation as finder of the facts, that "[t]here has been testimony that there was a warranty for a year; there's been talk about a warranty for five years," corroborates the contention of bias because of the characterization of defendant's evidence as "talk."

Defendant finally claims error in certain of the trial court's rulings on evidence. He asserts that the plaintiff, while testifying, was allowed to answer a leading question over the objection of the defendant, and that plaintiff's witness, Marshal Siegal, was allowed to give opinion evidence over the objection of the defendant. We have examined the record closely regarding these contentions and find no grounds for mandating a reversal, nor any need to detail our conclusion.

For the reasons stated the judgment of the Circuit Court is affirmed in case number 70M1-128999 and reversed in case number 70M1-131200.

Affirmed in part and reversed in part.

ADESKO, P. J., and JOHNSON, J., concur.