KERN HOTEL AND TAVERN, INC., Plaintiff-Appellant, *v.* THE HOME INSURANCE COMPANY *et al.,* Defendants-Appellees.

(No. 12697;

Fourth District—July 17, 1975.

*Rehearing denied August 15, 1975.*

Massey, Anderson & Gibson, of Paris (Richard L. James, of counsel), for appellant.

Willis P. Ryan, Dale A. Cini, and Donald Garrison, all of Ryan and Cini, Ltd., of Mattoon, for appellees.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff, Kern Hotel and Tavern, Inc., appeals from an order entered by the circuit court of Edgar County granting summary judgment in

favor of the defendants on its complaint seeking recovery under a fire insurance policy. The sole issue before this court is whether the trial judge erred in entering summary judgment in favor of the defendants.

The facts are undisputed and are as follows: On January 14, 1972, the Kern Hotel and Tavern, Inc., located in Paris, Illinois, was completely destroyed by fire. Attached to plaintiff's amended complaint are copies of the relevant fire insurance policies. Each provides that the insurance would not be in effect "while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 60 consecutive days."

William Kern's deposition indicates that he, his brother, and his father were equal shareholders in the Kern Hotel and Tavern, Inc. He testified that his father ceased operating the hotel and bar in January of 1971, at which point a Carl Batchelor ran the bar and hotel through a lease arrangement with an option to buy. He stated that on October 1, 1971, he notified Batchelor to vacate the premises. He further stated that as of October 4, 1971, the only occupant of the hotel was "one man that lingered on for about, I think, one to two weeks." He testified that after Batchelor vacated the premises the hotel business ceased. He stated that none of the beds in any of the rooms were made, the mattresses were exposed, and the linens were folded up and were placed in their cabinets. He stated that all personal property in the tavern, such as tables and stock, remained on the premises, that the liquor license was maintained, but that all liquor was removed from the premises. He stated that the license was continued so that whoever bought the property would buy the hotel and license as a whole package. He stated that after Batchelor's departure the property was put up for sale with various realtors around the city. During the last week of September, or the first week in October, he contacted a Mr. Tolliver and a Mr. Williams to go through the hotel during the day. The electricity and the heat in the hotel were left on because, "If it wasn't on, the pipes and everything would have frozen," but the telephone service was discontinued. Arrangements were made with the water company to discontinue water service and the gas valves to the stove and water heater were turned off. He stated that signs were placed around the building indicating that the building was for sale, and that for a short time there was a sign indicating that the building was closed temporarily. He stated that the locks on the buildings were changed after the last tenant left. He stated that he made trips to Paris every 2 weeks for 6 weeks to bring the hotel back to operating level, but he did not try to attract any business to the hotel: "As far as I was concerned, the business was extinct until another buyer came in."

W. J. Williams' deposition indicates that he was contacted by William

Kern, his nephew, to visit the hotel during the daytime one, two, or three times a week to check for intruders and to see that the furnace was on and that the thermostat was properly set. He stated that no one was living in the hotel and that the tavern was locked up after the first week of October in 1971.

Noble Tolliver's deposition indicates that he worked for the plaintiff for approximately 3 to 4 months prior to the fire. He stated that he was told to check the hotel as many times as he wanted, and that he understood this to mean nightly. He stated that the bathrooms were "winterized" and were without heat or water. He stated that on one occasion vandals broke some glass on the second floor which he promptly replaced. He stated that during the time he inspected the building no one lived there, nor was there any business operation therein, and that the only activity on the premises was when the realtor would bring prospects to view the premises. He described the condition of the hotel during this period as, "Well, like everything else when it don't have no attention, it gets kinda dusty."

Defendant's Deposition Exhibit No. 1 consists of a letter from Frank Kern, Jr., to the General Adjustment Bureau stating:

> "In our telephone conversation of last week you requested the date the Kern Hotel was vacated before the fire.
>
> According to my brother, William Kern, the building was last occupied on October 4, 1971."

On April 30, 1974, the trial judge granted summary judgment in favor of defendants on the grounds that the building was unoccupied for more than 60 days prior to the fire, and therefore, plaintiff was not covered under the policies.

■■ The plaintiff contends that the trial court erred in entering summary judgment in favor of defendant. We do not agree. It is well established that summary judgments "should be granted where there is no genuine issue as to any material fact. The court is to determine the existence or absence of a genuine issue as to any material fact from the affidavits, depositions, admissions, exhibits and pleadings in the case." *Carruthers v. B. C. Christopher & Co.*, 57 Ill.2d 376, 380, 313 N.E.2d 457, 459.

■■ Where there is a written contract and the extrinsic facts are not in dispute, the construction of the contract is a question of law to be decided by the court. (*Berry v. Blackard Construction Co.*, 13 Ill.App.3d 768, 300 N.E.2d 627.) We find this to be the case here. The contractual clause in question stated that the insurance would not be in effect if the building was "unoccupied" beyond 60 consecutive days. It has been stated that "[o]ccupancy must be defined in relation to the purpose for

which the property is designed and insured, and what constitutes such for one type of structure will not necessarily be the same for one of a different type." (*Kolivera v. Hartford Fire Insurance Co.*, 8 Ill.App.3d 356, 359, 290 N.E.2d 356, 358.) The facts here conclusively show that in the light of the purposes for which this hotel and tavern was designed and insured, said property was unoccupied for more than 60 consecutive days prior to the fire. It is undisputed that there was no activity in the hotel or tavern from the first or second week of October 1971, to the date of the fire in January 1972. William Kern testified that he did not try to attract any business to the hotel or tavern and that he only wanted to sell the premises. The condition in which the premises were left is consistent with this conclusion. Furthermore, Frank Kern, Jr., wrote a letter to the General Adjustment Bureau stating, "According to my brother, William Kern, the building was last occupied on October 4, 1971."

Accordingly, since there is no genuine issue as to any material fact, the trial judge did not err in entering summary judgment in favor of defendants, and said judgment is hereby affirmed.

Judgment affirmed.,

GREEN and CRAVEN, JJ., concur.