DROVERS NATIONAL BANK OF CHICAGO, TRUSTEE, Plaintiff-Appellee,
*v.* GREAT SOUTHWEST FIRE INSURANCE COMPANY,
Defendant-Appellant.

First District (2nd Division)   No. 76-1004

Opinion filed November 8, 1977.—Rehearing denied January 23, 1978.

Brundage, Garr & Driscoll, Ltd., of Chicago, for appellant.

Bernard Allen Fried, of Chicago, for appellee.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

This is an appeal by the defendant, Great Southwest Fire Insurance Company, from an order denying its post-trial motion for a new trial or judgment *n.o.v.* The essential facts of the plaintiff's case were agreed and stipulated to by the parties. Plaintiff was on and prior to December 18,

1974, the holder of legal title to a certain one-story frame residence located on South Halsted Street in the City of Chicago. The beneficial owner of the property was the Gardener Paradise Baptist Church.

Defendant insurance company had issued its fire insurance policy to the plaintiff, and a fire occurred on December 18, 1974, while the policy was in full force and effect. The fire completely destroyed the insured's premises, which destruction exceeded the limits of the policy of insurance.

At the time the trial commenced, the sole issue presented to the court was whether or not the premises were vacant or unoccupied at the time of the fire and for a period of 60 days prior thereto. It was further stipulated that the policy of insurance contained an exclusionary clause which precluded coverage if the premises were vacant or unoccupied for a period of 60 days or more prior to the fire. The plaintiff introduced the insurance policy, which was received into evidence, the pertinent clause of which provided as follows:

"* * * this company shall not be liable for loss occurring * * * (b) while a described building whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days;"

■■ In that the issue presented was in the nature of an affirmative defense, the defendant conceded that it had the burden of proof by a preponderance of the evidence. Defendant's first witness, Albert Wolanski, a supervisor of Peoples Gas, Light and Coke Company, testified that the services had been instituted on the premises in 1972 and were discontinued at the request of the customer as of October 1, 1974, and that no gas was provided for these premises subsequent thereto.

Daisy Barefield was also called as defendant's witness and testified that she resided next door to the premises in question since December 1969, and that she believed the premises to be vacant for a period of approximately one year before the fire. Commonwealth Edison records were introduced to show that no service was rendered after September 30, 1974. It was stipulated that City of Chicago Water Department records, if produced, would have shown that no water was provided for these premises after October 1, 1974, that the main water supply was shut off as of November 1, 1974, and that no water went through the water meter after November 1, 1974.

Plaintiff, in response to the affirmative matters submitted by the defendant, produced and submitted the record of a forcible detainer action that was filed July 16, 1974, wherein on August 2, 1974, the occupants of the premises were given an additional 60 days to vacate. Reverend James Lewis was called as a witness for the plaintiff. He testified that he was the pastor of the beneficial owner of the premises, the

Gardener Paradise Baptist Church, and that he had personally been on the premises on or about October 5 or 7, at which time he talked to an older woman who said she was going to move out. He talked to the same woman on the premises late in November, before Thanksgiving, and she said they would be moving out by the first of December. He also testified that he went back at night near the end of November and "They were using seven-day candles—seven-day candle lights. They had seven of them sitting around."

After both sides had rested, and immediately prior to the trial court's announcing its finding, the trial court stated as follows:

> "The question very simply is to the lack of services being rendered after these particular dates, either the 1st of October or the 30th of September. They themselves raise the irrebuttable presumption—I guess you call it—that no one was occupying the premises."

The court then discussed the testimony of Reverend Lewis, identifying him as a "party in interest to a certain extent," and concluded by proceeding to recount a prior personal experience as follows:

> "I know of my own knowledge that it is possible for people to have currents of electricity of their premises under circumstances which is unbeknown to the Edison Company. Counsel just suggested that it's possible that if someone were knowledgeable, he could turn the water back on after the City may have turned it off.
>
> I can tell you the one experience I had back two years ago, and I'm not saying it's applicable here; but I was asked by a clergyman one day to visit some very poor people of his particular parish. He asked me if perhaps I can help the father—there was a bunch of children involved—to get employment.
>
> I recall it was in the summer months, and I did visit the premises. The father was half asleep on the couch with the TV blaring with the ballgame. While I was talking to him, I saw a long cord going from somewhere behind the TV out the window of the premises.
>
> While I was speaking with him, I walked out and followed the cord and looked out the window. This home happened to be next to a railroad embankment. What he or somebody had done was unscrewed a bulb or taken a bulb out of a railroad light standing and put a plug—I guess you call it—in there, and he was getting his electricity from one of our railroads in the City.
>
> So, I'm taking that into account reaching a decision here of the possibilities. I can't completely come to a conclusion based on the facts that these utility services were not being rendered. That itself is established. These premises were not occupied.

Find for the Plaintiff."

While we acknowledge the law to be well settled that the trial court after having had the opportunity to see and hear the witnesses is entitled to weigh and consider the evidence (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375; *Schulenberg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624), nonetheless it is our duty as a reviewing court to reverse any judgment wherein the findings are clearly and palpably against the manifest weight of the evidence (*Royal Ornamental Iron, Inc. v. Devon Bank* (1st Dist. 1975), 32 Ill. App. 3d 101, 336 N.E.2d 105; *Kuperman v. Leak* (1st Dist. 1974), 20 Ill. App. 3d 491, 314 N.E.2d 504; *Dobie v. Livengood* (3d Dist. 1957), 12 Ill. App. 2d 343, 139 N.E.2d 599), or wherein there is a clear and palpable error in some other respect (*Brown v. Commercial National Bank* (1969), 42 Ill. 2d 365, 247 N.E.2d 894, *cert. denied* (1969), 396 U.S. 961, 24 L. Ed. 2d 425, 90 S. Ct. 436; *Lageschulte v. Steinbrecher* (1st Dist. 1976), 36 Ill. App. 3d 909, 344 N.E.2d 750).

In *La Salle National Bank v. American Insurance Co.* (1st Dist. 1973), 14 Ill. App. 3d 1027, 303 N.E.2d 770, plaintiff's complaint requested that the trial court determine that the loss was covered by the policy written by defendant because the exclusion provision of the policy was not applicable to the loss and damages sustained by plaintiff. The court, in finding for the defendant, that the damage came within the provisions of the exclusion, held that unequivocal terms of insurance policies must be construed according to their plain meaning, with clearly stated exclusions to be given effect.

■■ ■ In an insurance contract, what is meant by the term "occupancy" is a question of law, but whether a building was occupied within the meaning of that term is a question of fact. (*Home Insurance Co. v. Mendenhall* (1897), 164 Ill. 458; *Schuermann v. Dwelling House Insurance Co.* (1896), 161 Ill. 437; *Kolivera v. Hartford Fire Insurance Co.* (1st Dist. 1972), 8 Ill. App. 3d 356, 290 N.E.2d 356.) Occupancy must be defined in relation to the purposes for which the property is designed and insured, and what constitutes such for one type of structure will not necessarily be the same for one of a different type. *American Insurance Co. v. Foster* (1879), 92 Ill. 334; *Kern Hotel and Tavern, Inc. v. Home Insurance Co.* (4th Dist. 1975), 30 Ill. App. 3d 196, 332 N.E.2d 197; *Kolivera; Western Assurance Co. v. Mason* (1st Dist. 1879), 5 Ill. App. 141.

In the case at bar, the defendant insurance company submitted substantial evidence to prove that the premises in question were not occupied and thus that the exclusion provision of the insurance policy was applicable. The trial court placed much emphasis on the evidence of defendant pertaining to whether utility services were rendered, to the extent of stating for the record:

"* * * They themselves raise the irrebuttable presumption—I guess you call it—that no one was occupying the premises."

However, the court then related the lengthy personal experience recited above, that happened approximately two years prior to the hearing, and stated specifically that:

"So, I'm taking that into account reaching a decision here of the possibilities. * * *"

Although in a bench trial it is presumed that the trial judge has considered only competent evidence, this presumption may be rebutted where the record affirmatively shows the contrary. *Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375; *McFail v. Braden* (1960), 19 Ill. 2d 108, 166 N.E.2d 40.

It is a well-established principle of law that in a trial of a case, the trial judge may consider only that knowledge he has acquired by the introduction of evidence or of which he may take judicial notice. The basic reasoning behind the rule was well enunciated in the case of *McGurn v. Brotman* (1st Dist. 1960), 25 Ill. App. 2d 294, 298, 167 N.E.2d 12, wherein the court stated:

"In a trial the parties have the right to confront adverse witnesses. In the absence of a stipulation the trial judge may consider only that knowledge which he has acquired by the introduction of evidence or of which he may take judicial notice. The reason for this procedure is that the concept of fair play requires that all parties to an action be given a fair opportunity to rebut any evidence which might be damaging to their position. * * *"

In *Johnson v. Johnson* (1st Dist. 1975), 34 Ill. App. 3d 356, 340 N.E.2d 68, the trial judge, before any evidence was presented to him, stated a series of facts and circumstances that he had learned from a pretrial conference. In its decision, reversing and remanding with directions, this court, after first stating that unquestionably the facts considered by the trial court affected the rights of the parties, concluded:

"Unless they were judicially cognizable, they had to be proved. (*McGurn v. Brotman*, 25 Ill. App. 2d 294, 167 N.E.2d 12.) This was true even though they were personally known to him, either as a court or as an individual. (*Abbott v. Abbott*, 129 Ill. App. 2d 96, 262 N.E.2d 502; 29 Am. Jur. 2d *Evidence* §15 (1967).) The right of a court to act on that which is known to it must be subordinate to those requirements of form and orderly communication which regulate the mode of bringing controversies into court, of starting and conducting them. (29 Am. Jur. 2d *Evidence* §14 (1967).) * * *" *Johnson*, 34 Ill. App. 3d 356, 363.

So also in *Wolfe v. Chicago Transit Authority* (1st Dist. 1971), 133 Ill. App. 2d 344, 273 N.E.2d 269 (abstract), in an action for injuries sustained when the plaintiff was allegedly caught in the automatic doors of a rail coach, the court held that denial of the company's post-trial motion on the grounds that the judge had placed the trial transcript between the doors of a train and the result was contrary to the company's evidence, was reversible error.

Our Illinois Supreme Court, in the very recent decision of *People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849, enunciated:

> "The rule in Illinois and other jurisdictions is that it is improper for the trier of fact to conduct experiments or private investigations which have the effect of producing evidence which was not introduced at trial. (*E.g., Harris; Wallenberg; People v. Thunberg* (1952), 412 Ill. 565; *People v. Rivers* (1951), 410 Ill. 410; *People v. McMiller* (1951), 410 Ill. 338; *People v. Cooper* (1947), 398 Ill. 468; Annot., 95 A.L.R. 2d 351 (1964); 75 Am. Jur. 2d *Trial* sec. 991 (1974); 58 Am. Jur. 2d *New Trial* sec. 93 (1971).) * * *"

The court then proceeded to capsulize the decisions in the cases listed, which we believe merit our consideration even though they are criminal and not civil in nature. Thus, in *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143, the defendant's alibi included a statement that there were no gas stations on a certain road. The trial judge stated that he knew from his private knowledge that there were gas stations on the road in question. The conviction was reversed on the ground that the trial court had relied on private knowledge rather than facts in evidence. In *Thunberg*, the trial court read a confession not in evidence and conducted a private interview of the prosecuting witness and her parents. The trial judge in *Rivers* had remarked about teen-age murders being on the rampage, and stated that the State's Attorney (who was never in court on the case) had stated that there were over 400,000 unlicensed and unregistered guns in Chicago, matters *dehors* the record. In *McMiller*, the trial judge specifically referred to the fact that he had made a private investigation to find out personal information about the defendant. In *Cooper*, the trial judge explored the background of certain of the witnesses by reference to other cases in which he had seen and heard them testify and also conducted a private view of the scene.

■■ In the case at bar, the record is clear and plainly rebuts any presumption that the trial judge considered only admissible evidence and disregarded inadmissible evidence in reaching his conclusion. In view of the clear and palpable error committed by the trial judge in placing such emphasis on a specific prior personal experience, which was completely

*dehors* the record, we find it necessary to reverse and remand this case for a new trial.

Accordingly, the judgment of the circuit court of Cook County will be reversed and the cause remanded for a new trial.

Reversed and remanded.

DOWNING, P. J., and STAMOS, J., concur.