DC ELECTRONICS, INC., *et al.*, Plaintiffs-Appellants, *v.* EMPLOYERS MODERN LIFE COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 79-1946

Opinion filed November 5, 1980.

Moriarty, Rose & Hultquist, Ltd., of Chicago (Maurice J. Moriarty, of counsel), for appellants.

John L. Schroeder, of Vanderwater, Gooding & Schroeder, of Aurora, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The principal issue presented by this appeal is whether an insurance company (defendant Employers Modern Life Company ("Employers")) is required by law to notify the owner of an insurance policy (plaintiff DC Electronics, Inc. ("DC")) on the life of the owner's employee (Donald J. Barrett ("Barrett")) that the five-year term contract of insurance was about to expire and a premium was due in order to exercise

an option to renew the existing policy or convert it into a new policy. We answer this question in the affirmative. We reverse the trial court's decision to deny DC's and Merchant's[1] motion for summary judgment and to grant summary judgment to Employers, and remand.

The facts emerge from the pleadings, exhibits, affidavits and depositions filed by the parties. On June 1, 1973, Employers issued its five-year term policy No. 18499 in the face amount of $150,000 on Barrett's life, with an expiration date of June 1, 1978. His wife, Eva, was the named beneficiary. An option to renew or convert the policy without evidence of insurability under the terms of the policy was vested solely in its owner. Barrett notified Employers on August 31, 1976, that Donald J. Stumm would thereafter be considered his agent of record with respect to the policy and correspondence ensued between them. On October 22, 1976, at Barrett's request, the ownership of and beneficial interest in the policy was transferred from Barrett and his wife to DC. On November 10, 1976, additional plaintiff Merchants National Bank of Aurora, as trustee under trust agreement dated November 1, 1976 ("Merchants"), was named beneficiary of that policy at the request of DC. This change purportedly was made in order to fund a combination stock redemption and cross-purchase agreement between DC and Barrett, who was formerly president and then chairman and chief executive officer of DC.

On or about April 5, 1978, Employers assertedly sent a letter to Barrett notifying him of the June 1, 1978, insurance premium policy date, together with a notice of premium due. DC and Merchants denied receipt by Barrett, DC, Merchants or Stumm of the April 5 letter or notice.

For the purpose of demonstrating a vital and continuing interest in coverage, proof was presented purporting to show that prior to June 1, 1978, Barrett had suffered several massive heart attacks. His stock redemption agreement with DC was under-funded and both he and DC were actively seeking additional insurance on his life until the date on which he died.

The June 1, 1978, premium on the policy was not paid on that date. Barrett died on November 4, 1978. Stumm notified Employers of Barrett's death and requested claim forms. He was then advised by Employers of the nonpayment of the June 1, 1978, premium. DC, as owners of the policy, tendered the June 1, 1978, premium to Employers on November 13, 1978, less than six months after its due date, in an effort to cure the default. Employers returned DC's check.

Suit for delaratory judgment was then brought by DC and Merchants. The action was pleaded in the alternative: that the alleged April 5, 1978, notice did not comply with the requirements of section 234 of the

---

[1] An additional plaintiff, more fully described below.

Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 846) ("Code"); alternatively, that the April 5, 1978, notice was neither sent by Employers nor received by DC, Merchants, Stumm or Barrett. Employers filed an answer to the complaint, joining issue.

DC and Merchants requested Employers to admit certain facts and genuineness of certain documents, including the authenticity of Employers' letter of April 5, 1978, and insurance premium renewal notice, and the fact that no other premium notice or written communication aside from that alleged letter was ever sent by Employers to DC, Merchants, Stumm, Barrett, or to the predecessor agents on the insurance policy. Employers declined to respond to this request, nor did it file any motion with respect to the request to admit.

DC and Merchants thereafter moved for summary judgment supported by affidavits which assert that the April 5, 1978, letter and accompanying notice of premium were never received by DC, Merchants, Stumm, Barrett or Barrett's secretary who opened all his mail. No answer to the motion for summary judgment was filed by Employers, nor did it file any counteraffidavits concerning the alleged lack of notice for which DC and Merchants contended. The trial court denied this motion.

Employers thereafter filed its motion for summary judgment supported only by a copy of the insurance policy originally tendered to Barrett. In its motion, Employers asserted that the five-year term of insurance had expired by its own terms on June 1, 1978, without having been renewed or converted, Barrett had died on November 4, 1978, at which time the policy of insurance was no longer in effect, and there existed no genuine, material issue of fact, so that judgment should be entered for Employers. This motion was granted by the trial court. The policy contained provisions related to both renewal and conversion. We consider only the renewal language, since only renewal was attempted by DC, as follows:

> "Renewable Privilege. The Owner is hereby given the privilege of renewing this policy on the life of the Insured on any expiry date without evidence of insurability for an additional five-year term period, provided that no renewal period shall extend beyond the policy anniversary on which the Insured's attained age is 65 years. Renewal shall be effected by payment, on or before its due date, of the increased premium as defined herein.
>
> * * * The premiums for successive term periods shall be based upon the attained age at renewal and the Company's premiums in effect on the Policy Date of this policy.
> * * *"

The policy provides that all rights and privileges thereunder are vested in the named owner during the lifetime of the insured.

DC and Merchants maintain that section 234 (1)[2] of the Code requires all life companies doing business in Illinois to send notices of premiums due to their insureds not less than 15 days nor more than 45 days prior to the date when the premium is payable and, in the absence of such notice, the owner of the policy has six months after default to make payment of the late premium. They argue that the Code is of particular importance in this instance, since the provisions relating to renewal and conversion under the policy were predicated upon the payment of a premium to be ascertained and fixed by the company itself according to its rates then in effect and reason that they could not make an election for either renewal or conversion without first having been told what premium they were required to tender. The absence of notice in this case, they contend, was the reason for having tendered the amount of the previous premium paid. Employers counters that section 234 of the Code does not require an insurer to give notice of the expiration of a policy of term insurance which has been written for a specific period because Employers neither cancelled nor declared DC's policy as forfeited. Rather, it claims, the policy of insurance issued on decedent's life expired on June 1, 1978, by virtue of its express terms rather than because of any cancellation or forfeiture. Employers relies here upon *Crutchfield v. Continental Assurance Co.* (1949), 336 Ill. App. 411, 84 N.E.2d 333, in support of its contention, as it did in the trial court. The trial judge found *Crutchfield* controlling.

Crutchfield was covered under a group insurance plan during his employment with Central Illinois Public Service Company ("Central"). When Central discontinued service in Centralia and sold its plant to its employees, the insurance coverage was temporarily continued with an

---

[2] "§234. Notice of premium required.

(1) No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace, except that in any case in which a parent insures the life of his minor child, the company may send notice of premium due to the parent. Such notice shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy as provided for by the policy. The affidavit of any officer, clerk or agent of the company or of any one authorized to mail such notice that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given."

expiration date of December 24, 1940. Under the plan, Crutchfield was given an option to convert the group insurance to a new and individual policy of life insurance without a medical examination, provided the option was exercised within 31 days of the expiration date. Crutchfield sustained a heart attack December 12, 1940, and died on December 29, 1940. On January 18, 1941, Crutchfield's widow demanded the issuance of a straight line insurance policy. Continental Assurance Company's (Continental) refusal to issue the policy was upheld by the appellate court on the ground that the group policy expired December 24, 1940, by the express terms of the group certificate and master policy, not by reason of any cancellation or forfeiture conditioned upon formal notice by or from the insurance company or the former employer; therefore, notice was not required under section 234.

The operative statutes, policy and facts in *Crutchfield* are significantly different from those presented in the case at bar for several reasons. First, section 234(2) specifically excludes group insurance policies from within the terms of section 234(1), and that section therefore could not have applied to the group life insurance policy involved in *Crutchfield* in any event. Second, the group life insurance policy issued in *Crutchfield* by its terms could not have been renewed by an individual because it came to an " * * * end on December 24 next following the date of termination of his employment with the employer." No analogous policy provision is involved in the case before us. Third, in the case at bar, the same policy issued on Barrett's life would have been continued subject only to payment " * * * on or before its due date, of the increased premium * * * based upon the attained age at renewal and the company's premium in effect on the policy date on this policy." No such option of renewal was or could have been offered by Continental in *Crutchfield* because of the entirely different type of policy that would have had to be made available. Last, the option language of the *Crutchfield* policy required that Crutchfield apply for the change of insurance in writing, accompanied by payment of the necessary premium. No such requirement of application for renewal of the existing policy is set forth in the option for renewal in the instant case.

■■ An option contained within an insurance contract, such as election to renew an existing policy, is a valuable and substantial prerogative, often made part of the bargain in the purchase of the insurance contract, and bought and paid for by the insured or owner of the policy with the premium. (*Schmidt v. Equitable Life Assurance Society* (1941), 376 Ill. 183, 191-92, 33 N.E.2d 485; *Knapp v. John Hancock Mutual Life Insurance Co.* (1924), 214 Mo. App. 151, 160, 259 S.W. 862, 865.) The language of a life insurance policy must be construed liberally in favor of the insured toward the end that he will not be deprived of the benefit of

the insurance for which he has paid, except where the terms of the policy clearly require a different result. (*Schmidt.*) Nothing in the language of the policy before us requires an owner to take any affirmative act prior to receiving notice from the insurer as contemplated by the statute in order to benefit from the renewal of that coverage. Stumm's uncontradicted interpretation of the policy was that all Barrett would have to do to renew the policy under its terms would be to pay the premium after Employers notified him of the required amount. Evidently Employers construed its policy and the statutory requirements in the same manner since it claims to have written to Barrett, the former owner of the policy, advising him of the fact that June 1, 1978, was the insurance policy renewal date, together with a notice of premium date.

The notice Employers allegedly sent set forth the same policy number as the existing policy, the increased amount of payment due, $724.16, the entity to whom the payment was payable and the place to which the payment was to have been sent, constituting much of the information required under section 234(1), but omitting part of it. DC and Merchants contend and Employers concedes that the notice failed to satisfy the time frame specified by statute. The notice also failed because it neglected to notify the owner of the policy that it would become forfeited and void unless the premium due was paid, as required by section 234(1).

■■ ■ It is also to be noted that section 234(1) does not address itself to "cancellation," but provides that no policy shall be "*forfeited* or *lapsed* by reason of *nonpayment* when due of any premium * * * ," within six months in the absence of written notice. The statute is silent with respect to the meaning of the term "lapsed"; however, a "lapsed" policy, according to Stumm, the insurance agent, occurs when the premium has not been paid when due, a definition in common currency. (See, *e.g.*, *Life & Casualty Ins. Co. v. Wheeler* (1936), 265 Ky. 269, 275-76, 96 S.W.2d 753, 756.) No countervailing interpretation was offered by Employers. The failure to timely renew and pay the necessary premium in order to continue the same policy was the precise basis for Employers' declination to pay the policy proceeds in the instant case. Under these facts, and with regard to the policy here in question, *Crutchfield* is of little precedential value.[3] What was said in *Shiaras v. Chupp* (1974), 18 Ill. App. 3d 722, 726, 310 N.E.2d 481, *aff'd* (1975), 61 Ill. 2d 164, in a different context is equally applicable here with regard to notice prior to lapse:

"* * * [A]n insurance company is under a duty to reasonably remind its insured that a premium is due. An insurance company cannot be permitted to avoid the notification requirements of

---

[3] Cases from other jurisdictions cited by Employers involve statutes and fact situations dissimilar to the case *sub judice* and are therefore of no application.

section 143.5 [Ill. Rev. Stat. 1973, ch. 73, par. 755.5, since repealed] by keeping silent and inducing the insured to forget to pay the premium."

The same reasoning applies to section 234(1) of the Code with respect to life insurance policies, and proper statutory notice should have been given by Employers to DC prior to the effectuation of a lapse.

■■ Employers contends that the language of the policy required the renewal premium to have been paid within 31 days following the expiration date of June 1, 1978. Since no action was taken to renew or convert the policy within that 31-day period, Employers urges that the renewal cannot be deemed to have been effective. DC and Merchants insist that the six-month extension period provided by section 234(1) is applicable instead. As we have earlier found, however, Employers' failure to give notice triggered the application of section 234(1), which by its terms extends the period of payment to six months from the date of default. Statutory provisions applicable to a contract of insurance are deemed to form a part of that contract and must be construed in connection therewith. (*Konrad v. Hartford Accident & Indemnity Co.* (1956), 11 Ill. App. 2d 503, 513, 137 N.E.2d 855.) Any attempt by Employers to dilute or diminish statutory provisions applicable to its contract of insurance is contrary to public policy, and any conflict between statutory and policy provisions will be resolved in favor of the statutory provisions. (*Prosk v. Allstate Insurance Co.* (1967), 82 Ill. App. 2d 457, 459, 226 N.E.2d 498.) Therefore, the six-month extension period applies under this policy and these facts. The payment proffered by DC to Employers within that period of time was sufficient to maintain the viability of the insurance coverage provided by the contract.

In the view we take of the applicability of section 234(1) of the Code to these facts and the deficiencies of Employers' notice, both with respect to its timing as well as its content, we need not consider nor decide whether Employers actually sent the notice alleged or whether the intended recipients actually received it, since the notice would have been ineffective in either instance. In denying DC and Merchants' motion for summary judgment and granting Employers' motion for summary judgment, the trial court erred, and its decisions will be reversed and the cause remanded for entry of judgment in favor of DC and Merchants.

Reversed and remanded.

PERLIN, P. J., and DOWNING, J., concur.