BERLE F. CASTEEL, Plaintiff-Appellant, *v.* DOUGLAS SMITH and DON SMITH, Defendants and Third-Party Plaintiffs-Appellees.—(Charles Binder, Third-Party Defendant.)

Fourth District   Nos. 4—82—0114, 4—82—0136 cons.

Opinion filed October 20, 1982.

John C. Taylor, of Hendrix, Lierman & Taylor Law Office, P.C., of Champaign, for Berle F. Casteel.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for Douglas Smith and Don Smith.

Charles C. Hughes, of Welsh, Kehart, Shafter & Hughes, P.C., of Decatur, for Charles Binder.

JUSTICE MILLS delivered the opinion of the court:
Snowmobiles.
What standard applies?
Ordinary negligence, or something higher?
Ordinary negligence.
We reverse and remand.
Casteel brought suit against Douglas and Don Smith for injuries he received in a snowmobile accident. The Smiths in turn brought a third-party suit against Binder, alleging that Casteel's injuries were the result of Binder's negligent behavior. The circuit court granted a motion by the Smiths for summary judgment against Casteel and also granted a motion by Binder for summary judgment against the Smiths. Casteel and the Smiths appeal.

On a Sunday afternoon in March 1978, Casteel joined a group of high-school-age youths who were riding their snowmobiles on a nearby frozen pond. Already at the pond, Binder and Douglas Smith,

along with other snowmobilers, were using the steep bank of the pond's dam as a ramp from which they were launching their snowmobiles up into the air and out onto the pond's frozen surface. The snowmobilers would begin their ride at the bottom of the dam's bank, ride up the side of the bank at speeds in excess of 30 miles per hour, and upon reaching the crest of the bank, fly about three to four feet into the air for approximately 10 to 15 feet, and land on the ice-covered pond. Before each rider began his jump, another rider stationed at the crest of the dam's bank would motion to the rider at the bottom when the pond's surface was clear of other snowmobilers.

In the sequence of events that led to the present suit, Binder was stationed at the crest of the dam. He motioned to the next rider—Douglas Smith—that the pond's surface was clear. Smith began his ascent. He was over halfway up the side of the dam when Binder noticed that Casteel was sitting on the pond's surface directly on the spot where Smith would be landing his snowmobile. Casteel, sitting on his snowmobile, was apparently stuck on the slick ice. The deafening roar of the snowmobile engine drowned out Binder's attempt to warn either Casteel or Smith. Smith, unaware of Casteel stuck on the ice ahead, reached the top of the dam at a speed over 40 miles per hour. He flew out across the pond's surface and landed directly on Casteel, causing him severe injuries.

Casteel filed suit against Douglas Smith and against Smith's father, Don, the owner of the snowmobile Douglas was riding. The Smiths filed a third-party complaint against Binder, alleging that Binder negligently signaled Douglas to make the jump. The circuit court granted a motion by the Smiths for judgment on the pleadings. Binder appealed. This court reversed. (*Casteel v. Smith* (1981), 98 Ill. App. 3d 1206 (Rule 23 order).) The circuit court then granted a motion by the Smiths for summary judgment and also granted a motion by Binder for summary judgment. The trial judge stated that the allegations of ordinary negligence in Casteel's complaint and the Smiths' third-party complaint failed to state a cause of action.

## I

▌██ The first issue before this court is whether an allegation of ordinary negligence states a cause of action where the injury occurred while the parties were engaged in recreational snowmobiling.

It does.

All of the parties to this appeal have made involved arguments urging this court to make a broad pronouncement of the state of the law in negligence actions involving sporting activities. That pro-

nouncement is unnecessary. The legislature has already spoken with respect to the negligence standards for snowmobile activities in enacting the Snowmobile Registration and Safety Act (Ill. Rev. Stat. 1981, ch. 95½, par. 601—1 *et seq.*). Section 5—1(B) of the Act states that:

"It is unlawful for any person to drive or operate any snowmobile in the following ways:
* * *

B. In a careless, reckless or negligent manner." (Ill. Rev. Stat. 1981, ch. 95½, par.. 605—1(B).)

Thus, ordinary negligence is a standard to which snowmobiles are statutorily held.

■ In *Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 409, 410 N.E.2d 525, 529, this court held that "[t]he violation of an ordinance establishing the standard of care represents *prima facie* evidence of negligence." (See also *Ney v. Yellow Cab Co.* (1952), 348 Ill. App. 161, 108 N.E.2d 508, *aff'd* (1954), 2 Ill. 2d 74, 117 N.E.2d 74.) It was also held that whether the defendant violated the ordinance is a question of fact and before that question can be reached, two conditions must be met. Those conditions are: first, the plaintiff must be within the class of persons the ordinance was designed to protect; and second, the plaintiff must have suffered the type of harm the ordinance was designed to prevent. Both of these conditions are met in the present case.

With regard to the first condition, section 1—1 of the Act states that the Act is designed to protect those "persons and property in and connected with the use, operation and equipment of snowmobiles." (Ill. Rev. Stat. 1981, ch. 95½, par. 601—1.) Section 1—2.09 defines operate as meaning "to ride in or on * * * use or control the operation of a snowmobile in any manner * * *." (Ill. Rev. Stat. 1981, ch. 95½, par. 601—2.09.) Section 1—2.10 defines the term operator as meaning "every person who operates or is in actual physical control of a snowmobile." (Ill. Rev. Stat. 1981, ch. 95½, par. 601—2.10.) Casteel, as the driver of a snowmobile at the time of the accident, clearly falls within the class of persons which the statute was designed to protect.

The second condition is also met. Section 1—1 of the Act states in pertinent part that the Act was intended "to promote [the] safety" of the persons covered by the provisions. Personal injuries, as were suffered by Casteel, unquestionably fall within the type of harm that the promotion of snowmobile safety is designed to prevent. Therefore, it is clear that snowmobilers do owe each other the duty of ordinary care.

The Smiths argue that the standards in the statute only apply to the general operation of snowmobiles and do not apply where the parties agreed to meet in a relatively confined area to operate their snowmobiles in a potentially dangerous manner. Their position is not supported by the language of the statute. Section 1—1 of the Act declares that the intent of the Act is "to promote safety for persons and property in and connected with the use, operation and equipment of snowmobiles." Section 5—1(B), itself, states that it is unlawful for *any* person to operate a snowmobile in a negligent manner. Neither of these provisions make any distinction in their application based on the nature of the use of the snowmobiles. Their language covers all snowmobile activity including the present situation.

The legislature did, however, foresee the chilling effect that the statute might have on organized sporting events and it provided exceptions for such events in the Act. For example, exceptions from the numbering provisions and from the equipment requirements of the Act are provided for snowmobiles used only on international and national competition circuits, in sections 3—11 and 4—4, respectively. (Ill. Rev. Stat. 1981, ch. 95½, pars. 603—11, 604—4.) Even more relevant to the present issue, section 5—5 provides exceptions from the provisions of article V—including the negligence standard of 5—1(B)—for special snowmobile events. The section reads in full that:

> "Nothing contained in this Article [V] shall be construed to prohibit any local authority of this State from designating a special snowmobile event. In such case the provisions of this article shall not apply to areas or highways under the jurisdiction of that local authority." (Ill. Rev. Stat. 1981, ch. 95½, par. 605—5.)

Therefore, it is clear from the plain language of the Act that while the legislature may not have intended the negligence standards to apply to organized snowmobile sporting events, it did intend the standards to apply to informal, recreational activity such as is presently before the court.

## II

Next, this court must determine whether this case contains a genuine issue of fact sufficiently material to require the reversal of the circuit court's order granting summary judgment. In reviewing the order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact does still exist. (*Interlake, Inc. v. Harris Trust & Savings Bank* (1978), 57 Ill. App. 3d 524, 373 N.E.2d 413; *Strom International, Ltd. v. Spar*

*Warehouse & Distributors, Inc.* (1979), 69 Ill. App. 3d 696, 388 N.E.2d 108.) On appeal, all of the facts must be viewed in a light most favorable to the nonmoving party. (*Montague v. School Board* (1978), 57 Ill. App. 3d 828, 373 N.E.2d 719; *Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 360 N.E.2d 510.) The reviewing court will reverse the order granting summary judgment if it determines that a genuine issue of material fact does exist. *Rubin v. City National Bank & Trust Co.* (1980), 81 Ill. App. 3d 1020, 402 N.E.2d 281; *Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 403 N.E.2d 1239.

There are at least four issues of fact sufficiently material to require this court to reverse the circuit court:

First, there is the issue of whether Douglas Smith violated section 5—1(B) of the Snowmobile Registration and Safety Act.

Second, there is the issue of whether there was sufficient light at the time of the accident for Binder to see other riders on the pond's surface, and thus for Smith to reasonably rely on Binder as a lookout.

Third, there is the issue of whether Smith was traveling too fast to make a reasonably safe jump.

Finally, there is the issue of whether Binder was keeping a close watch on the pond's surface.

Therefore, because Casteel's and the Smiths' allegations of ordinary negligence do state a cause of action and because there are genuine issues of material fact remaining in this case, we find that the circuit court erred in granting the motions for summary judgment.

Reversed and remanded.

GREEN, P.J., and LEWIS, J., concur.