GEOFFREY M. BELLMER, a Minor, by Amy Bellmer, his Mother and Next Friend, *et al.*, Plaintiffs-Appellants, v. CHARTER SECURITY LIFE INSURANCE COMPANY, Defendant-Appellee (Oscar McNear, Sr., Defendant).

Fourth District No. 4—85—0429

Opinion filed January 28, 1986.

Drach & Deffenbaugh, P.C., of Springfield, for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This action was brought against Charter Security Life Insurance, based upon policies issued by its predecessor, Louisiana & Southern Life Insurance Company, and its agent, Oscar McNear, Sr. Defendant McNear's motion to dismiss count II of the complaint, directed against him personally, was granted; and the judgment upheld on appeal in *Bellmer v. Charter Security Life Insurance Co.* (1982), 105 Ill. App. 3d 234, 433 N.E.2d 1362. Defendant Charter filed a motion for summary judgment (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005), based upon its interpretation of section 234 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 846), arguing it had no duty to provide notice of default to Amy Bellmer, as owner of the insurance policy, but only to James Bellmer as the person whose life was insured. The trial court granted Charter's motion for summary judgment, and thereafter denied the motion for reconsideration. This appeal followed. We reverse.

In reviewing an order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue as to a material fact does still exist. On appeal, all of the facts must be viewed in a light most favorable to the nonmoving party. The reviewing court will reverse the order granting summary judgment if it determines that a genuine issue of material fact does exist. (*Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1098-99, 441 N.E.2d 860, 863, and cases cited therein.) Thus, on examination of the record, if it can be fairly said that a triable issue of fact exists, the motion for summary judgment should be denied (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 599, 169 N.E.2d 73, 76); however, since it is a drastic method of disposing of litigation, it should be granted only when the movant's right thereto is clear and free from doubt (*Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 310, 395 N.E.2d 119, 121-22). (See also *Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 141-42, 355 N.E.2d 1, 2.) The use of

summary judgment is proper when it is clear that all material facts are before the court, the issues are defined, and the parties are agreed that only a question of law is involved. (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292, 152 N.E.2d 576, 580.) Nevertheless, the order of summary judgment must be reversed if it is based upon an erroneous interpretation of the law.

 Statutory provisions applicable to a contract of insurance, and in force at the time of its making, form a part of such contract and should be construed in connection with the policy. (*Konrad v. Hartford Accident & Indemnity Co.* (1956), 11 Ill. App. 2d 503, 513, 137 N.E.2d 855, 860; 44 C.J.S. *Insurance* sec. 302, at 1214-16 (1945).) Until accepted by an insurer, the application has been regarded as merely an offer or proposal, but once accepted and a policy is issued making the application part of the policy, the application must be construed together with the policy as part of the entire contract. (*New York Life Insurance Co. v. Rak* (1962), 24 Ill. 2d 128, 131, 180 N.E.2d 470, 471; 13A Appleman, Insurance Law & Practice sec. 7584, at 249 (1976).) Insurance forfeitures are disfavored as insurance serves important functions in contemporary society and, even in doubtful cases, courts should be quick to find facts which support coverage (*Abbey v. Lumbermen's Mutual Casualty Co.* (1980), 83 Ill. App. 3d 995, 997, 404 N.E.2d 991, 992); and language of the policy should be liberally construed in favor of coverage, toward the end that the insured is not deprived of the benefit of insurance for which was paid, except where the terms of the policy clearly require a different result (*DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, 413 N.E.2d 23).

Section 234(1) of the Code provides in pertinent part:

"No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due *** within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, *to the person whose life is insured, or the assignee of the policy,* (if notice of the assignment has been given to the company) *at his last known post office address,* at least fifteen days and not more than forty-five

days prior to the day when the same is due and payable, before the beginning of the period of grace, except that in any case in which a parent insures the life of his minor child, the company may send notice of premium due to the parent." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 73, par. 846(1).)

The legislature has failed to expressly include the term "owner of the policy," when different from "the person whose life is insured" or his "assignee." (Compare N.C. Gen. Stat. sec. 58—207 (1982); Kan. Stat. Ann. sec. 40—410 (1981); N.Y. Ins. Law sec. 3211 (McKinney 1985).) We note, however, that section 245.1 of the Code, pertaining to assignability of life insurance, specifically states:

"No provision of the Illinois Insurance Code, or any other law prohibits an insured under any policy of life insurance, *or any other person who may be the owner of any rights under such policy*, from making an assignment of all or any part of his *rights and privileges* under the policy *including but not limited to* the right to designate a beneficiary thereunder and to have an individual policy issued \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 73, par. 857.1.

The applications for the policies which are the basis of this action were written on March 9, 1976. One application was for "split life" insurance in the amount of $100,000. The application requested the "[n]ame and address of proposed insured," which was completed with the information, "James M. Bellmer, 451 West Cook, Springfield, Ill., 62704." Question seven asked: "Where shall premium notices be mailed?" The response marked was, "[r]esidence." Question eight asked: "Owner: Who shall be the owner of any policy of life insurance issued Proposed Insured [box] If not, give full name and address." The response provided was: "Amy Bellmer—451 West Cook, Springfield, Ill., 62704." The beneficiary of the policy was also listed as "Amy Bellmer (wife of proposed insured)." Both James and Amy Bellmer signed the application, witnessed by Oscar McNear as agent for the insurer. This application resulted in issuance of policy No. 172412 on April 12, 1976; the policy specifications named James M. Bellmer as the "insured"; and specified the companion (annuity) policy number as 172411, and its annuitant as James M. Bellmer.

Also on March 9, 1976, an application was completed for a "split life annuity" policy. This form was likewise completed to show James M. Bellmer as the "proposed insured," giving his address, providing that premium notices should be mailed to "residence," and that the "owner" of the policy was Amy Bellmer at the address specified above, with Amy Bellmer also as the beneficiary. Annuity policy No.

172411 was issued on this application.

In March 1977 the Bellmers were divorced, and the above policies went unmodified. Shortly before August 1978, James Bellmer furnished defendant notice of his change of address. Notices had previously been directed to James Bellmer "c/o Amy Bellmer" at the West Cook address. James Bellmer failed to make the October 1978 premium payment on policy No. 172412, which had no automatic loan provision; as well as on annuity policy number 172411, which had an automatic loan provision which paid the premium on that policy only. He was notified of default in payment on the former policy, and of ways to utilize the annuity policy to provide himself with term life insurance; he was later notified of his reinstatement rights. Amy Bellmer, sole owner of the policy, was not so notified.

Defendant received James Bellmer's check for the October 1978 premium payment on policy No. 172412 on December 31, 1978, outside the grace period; and returned the check to him with a letter explaining his reinstatement rights, and providing a form (which portion completed by defendant showed Amy Bellmer as owner of the policy), and informing him of the overdue premium charge of $71.78. Amy Bellmer was not so notified.

On July 14, 1979, James Bellmer died as a result of an auto accident.

Various documents of the defendant insurer in the record show that the company recognized Amy Bellmer as owner of the policies; and that notices which were timely sent to James Bellmer were addressed to the named insured "c/o of Amy Bellmer" at "1327 North Fifth Street, Apt. 4, Springfield, Illinois, 62702"—this street address apparently being that furnished the insurer by Mr. Bellmer shortly before August 1978. The record indicates that it was made clear to Amy Bellmer at the time the insurance plan was started that she was to be the owner and premium payor as well as the beneficiary under the policies.

Policy No. 172412 includes the following as "general provisions":

> *"Ownership and control*: Unless otherwise designated in the application for this Policy, the Insured shall be the Owner of this Policy, provided, however, if you are a minor, all rights and privileges under this Policy shall be exercised by your parent or guardian."

The policy also provided that the beneficiary could be changed at any time by the "[o]wner" of the policy; and that the "[o]wner may at any time replace the Companion Policy hereunder with an eligible policy." The policy also included provisions for conversion.

Defendant Charter's motion for summary judgment raised as a defense that it had no duty under its policies or under Illinois law to do any of the things charged in the complaint, such as provide notice to Amy Bellmer; but only to provide notice to the person whose life was insured, which notice was in fact given him.

On appeal, plaintiff relies on her status as the owner of, and beneficiary under, the policies is obligating defendant Charter to notify *her* as to premiums due and owing, and other rights arising under the policies. She maintains that McNear, as the insurer's agent was aware that (1) she was the owner of the policies; and (2) after their inception, she was divorced from James Bellmer and lived separately from him. She urges that McNear's knowledge of these facts are chargeable to Charter. (See *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 231, 254 N.E.2d 457, 460.) Plaintiff relies on two cases in support of Charter's duty to notify her, as owner of the insurance policies, of factors affecting rights thereunder: *Talmage v. Union Central Life Insurance Co.* (1942), 315 Ill. App. 623, 43 N.E.2d 575, and *DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, 413 N.E.2d 23.

At the time *Talmage* was decided, section 234 of the Code read as it is stated above. (See *Talmage v. Union Central Life Insurance Co.* (1942), 315 Ill. App. 623, 627, 43 N.E.2d 575, 577.) The application in *Talmage* stated, " '[o]wnership and privilege to change the beneficiary shall vest in the insured and primary beneficiary jointly.' " (315 Ill. App. 623, 627, 43 N.E.2d 575, 577.) Mr. Talmage was to be the insured, and Mrs. Talmage, listed as his "divorced wife," was to be the primary beneficiary. The defendant in *Talmage* issued the policy, containing provisions including, " '[a]ll rights and privileges reserved to the insured or the owner of the policy are vested in the insured and said primary beneficiary jointly' "; and " 'ownership and privilege to change the beneficiary shall vest in the insured and primary beneficiary jointly.' " (315 Ill. App. 623, 635, 43 N.E.2d 575, 580.) A letter was sent on behalf of Mrs. Talmage to the defendant insurer requesting that they notify her promptly in the event premiums were not paid when due, so she could make sure the policy did not lapse and compel payment of the premiums in time to avoid such lapsing. Subsequently, Mr. Talmage went to the Chicago office of the defendant and talked to an employee about changing the address to which the premium notices were to be sent on the policy, informing the individual of *his* new mailing address. The defendant insurer was not notified that this was to be the address of the plaintiff, Mrs. Talmage. A detailed explication of the facts in *Talmage* is unnecessary here. Suffice

it to say that Mrs. Talmage was informed, after Mr. Talmage's death, that the policy had lapsed because the premium due had not been paid. She sued, contending that (1) as a condition precedent to forfeiture of the policy, it was necessary under the terms of the policy that she, as beneficial owner, be given notice that a premium was due; and (2) forfeitures are not favored by the law (see *Lenkutis v. New York Life Insurance Co.* (1940), 374 Ill. 136, 28 N.E.2d 86). The *Talmage* court considered the terms of the policy and concluded that Mrs. Talmage was not the ordinary type of beneficiary who could be removed at the will of the insured. We note that Mrs. Talmage argued that one of the rights and privileges reserved to the insured under the policy was the right to receive premium notices, and claimed she was due such notice under section 234 of the Code as well as the clear language of the policy, as joint owner. On the facts, the *Talmage* court reversed the trial court's finding for defendant and remanded the cause.

In *DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, 413 N.E.2d 423, Barrett, the person whose life was insured under the policy, requested that the ownership of and beneficial interest in the policy be transferred from himself and his wife to his employer, DC Electronics. The premium due notice was thereafter sent to Barrett and was not paid, and Barrett subsequently died. When a claim form was requested, the insurer advised of nonpayment of the premium, which DC Electronics then tendered to the insurer less than six months after its due date in an attempt to cure the default. The check was returned. In a suit for declaratory judgment, the trial court granted summary judgment to the insurer, which was reversed on appeal; the reviewing court finding that the policy provided that all rights and privileges thereunder were vested in the named owner during the lifetime of the insured. The *DC Electronics* court also found that under section 234(1) of the Code, proper statutory notice should have been given by the insurer to DC Electronics, as owner of the policy, prior to the effectuation of a lapse.

Irrespective of defendant's attempts to distinguish these cases, we conclude that they are, in fact, controlling. The statute, applications, and policies issued thereon clearly indicate Amy Bellmer was owner and beneficiary of the policies, and was entitled as such to notice in her own right. Indeed, a deposition in the record suggests that sending notice to the "owner" of a policy, when different from the "insured," was a custom followed by defendant; and that defendant viewed this custom as having been met in this case by virtue of having mailed notice to the insured "c/o" the owner. The abbreviation

"c/o" is commonly understood to mean *"in care of* on mail sent to a person through another person or other agency." (Webster's Third New International Dictionary 338 (1976).) Thus, notice sent to Mr. Bellmer in this way was sent to him, *through* Mrs. Bellmer, at Mr. Bellmer's address. Here, the statute expressly vests the person whose life was insured or his assignee with an enforceable right to certain notice; the application and the policy issued thereon vested this right in plaintiff as the owner. The application provided the owner's address, but the insurer nevertheless failed to provide her any notice. The circumstances required here that notice be sent to the last known address of the owner of the policy, and not just the insured, and it is only by this method that the insurer may argue it has fulfilled its duty and "declare" any policy forfeited or lapsed. Any unwritten assumptions by the insurer ought not relieve it of its obligations under the policy or statute.

For the reasons stated above, we reverse and remand the cause for further proceedings consistent with this opinion.

Reversed and cause remanded.

WEBBER and SPITZ, JJ., concur.