**CLARIN CORPORATION, an Illinois Corporation, Plaintiff,**

v.

**MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY, a Massachusetts insurance company, Defendant.**

No. 91 C 8198.

United States District Court, N.D. Illinois, E.D.

Jan. 19, 1994.

Stuart Smith, Gordon & Glickson, P.C., Gregory John Bueche, Huff & Gaines, Chicago, IL, for plaintiff.

Joseph J. Hasman, Ernest W. Irons, Sherri Lee Giffin, Peterson & Ross, Chicago, IL, for defendant.

***MEMORANDUM OPINION AND ORDER***

ALESIA, District Judge.

Before the court is Magistrate Judge Guzman's Report and Recommendation that the parties' cross motions for summary judgment be denied. Objections having been filed by both plaintiff Clarin Corporation and defendant Massachusetts General Life Insurance Company, the court reviews the recommendations *de novo.* 28 U.S.C. § 636(b)(1).

In its objections to Magistrate Judge Guzman's Report and Recommendation, Massachusetts General states that "[t]his case has been from the outset simple and straightforward with no material facts in dispute," a statement with which Clarin agrees. No ma-

terial facts in dispute, yes; simple and straightforward, no.

### FACTS

Clarin Corporation purchased a life insurance policy in the amount of $450,000 from Massachusetts General Life Insurance Company insuring the life of the late Carl Hammond, an employee of Clarin.[1] Clarin was the owner and beneficiary of the policy. Clarin purchased the policy to meet its contractual obligation to Hammond under Hammond's employment contract, which required Clarin to insure the life of Hammond, and to pay the proceeds to Hammond's beneficiaries in the event of Hammond's death. Question 8a of the insurance application asked, "To whom shall premium notices be mailed?" Three options were included on the application: proposed insured, owner, or other. The box marked "Owner" was checked. Question 8b asked, "Where shall premium notices be mailed?" Once again three options were provided: residence, business, and other. The box marked "Business" was checked. The application was signed by both the president of Clarin and Carl Hammond.

On or about April 7, 1991, Massachusetts General sent Clarin a Notice of Life Premium Due on April 26, 1991. Clarin did not pay the April 26, 1991, premium on or before the due date, or within the thirty-day grace period of the policy.[2] On or about May 26, 1991, Massachusetts General sent a lapse notice to Clarin for failure to pay premiums for the quarterly period ending April 26, 1991. The lapse notice stated that the policy terminated at the end of the grace period on May 25, 1991, with a sixty-one day reinstatement option, which Clarin did not exercise. Hammond, the insured, was not sent a lapse notice. On July 9, 1991, Hammond died. On July 17, 1991, Clarin made the late quarterly payment and filed a claim on the policy.

Massachusetts General denied the claim and refunded the payment.

Clarin argues that Section 234(1) of the Illinois Insurance Code, 215 ILCS 5/234(1),[3] prevented Massachusetts General from declaring the policy lapsed until the end of six months after default because Massachusetts General did not send a lapse notice to the insured, Hammond, as required by the statute. Section 234(1) provides:

Notice of Premium Required. (1) No life company doing business in this State shall declare any policy forfeited or lapsed within six months after default in payment of any premium installment or interest or any portion thereof, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, installment or interest, or any portion thereof, required by the terms of the policy to be paid, within six months from the default in payment of such premium, installment or interest, unless a written or printed notice stating the amount of such premium, installment, interest or portion thereof due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed with the required postage affixed, to the person whose life is insured, or the assignee of the policy, (if notice of the assignment has been given to the company) at his last known post office address, at least fifteen days and not more than forty-five days prior to the day when the same is due and payable, before the beginning of the period of grace, except that in any case in which a parent insures the life of his minor child, the company may send notice of premium due to the parent. Such notice shall also state that unless such premium or other sums due shall be paid to the company or its agents the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up policy

---

1. Neither party has objected to Magistrate Judge Guzman's findings as to the core, background facts, which are recited herein. Massachusetts General has expressly concurred with those factual findings, and all of Clarin's objections go to the magistrate judge's legal conclusions drawn from those findings.

2. Clarin had failed to pay premiums on time before, but had always eventually repaired the deficiency. Those prior instances are irrelevant to the resolution of this motion.

3. There is no dispute that Illinois law controls this diversity suit.

as provided for by the policy. The affidavit of any officer, clerk or agent of the company or of any one authorized to mail such notice that the notice required by this section bearing the required postage has been duly addressed and mailed shall be presumptive evidence that such notice has been duly given.

215 ILCS 5/234(1). Massachusetts General contends that under one of the following theories Section 234(1) does not prevent a declaration of lapse: (1) Section 234(1) is inapplicable to the facts of this case; (2) Clarin was Hammond's agent for the purpose of notice, or (3) Hammond waived his statutory right of notice by checking the "Owner" box on the application.

## ANALYSIS

### I. Count I: Breach of Insurance Contract

#### A. The Applicability of Section 234(1)

As correctly pointed out by Magistrate Judge Guzman in his Report and Recommendation, Section 234(1) appears intended to protect insureds and, by extension, their beneficiaries. Report and Recommendation at 10. However, Magistrate Judge Guzman's conclusion that "Clarin is not in the class of persons to be protected by the statute, and thus may not seek its assistance in funding its contractual obligation," *id.* at 10–11, is a broad holding not necessary to the resolution of this case. Nonetheless, having examined the language of the statute and its interpretive case law the court concludes that here Section 234(1) does not void Massachusetts General's declaration of lapse.

#### 1. The Plain Language of Section 234(1)

Undoubtedly, application of Section 234(1) to this case appears anomalous. After all, common sense asks, why should Clarin, whose own admitted bookkeeping errors created this pickle, benefit from the operation of a statute that does not appear to have been enacted for its benefit? Clarin had obligations under its employment agreement with Hammond, obligations it used the policy with Massachusetts General to fulfill. Hammond was not responsible for payments on

the policy at the time of his death. Therefore, why can Clarin now cite the statute's requirement of notice to Hammond in order to cure its failure to heed the notice it received?

One short answer is because the statute says so. Section 234 appears unambiguously to direct that notice be sent "to the person whose life is insured," making no provision for substituting notice to the owner where the owner and insured are different persons. This plain language argument urges that, for whatever reasons, the Illinois legislature thought that it was necessary for the insured always to receive notice, and that it would be quite a leap for this court to ignore the legislature's prescription. *See, e.g., Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495 n. 13, 105 S.Ct. 3275, 3284 n. 13, 87 L.Ed.2d 346 (1985). (directing that courts reject the implications of the plain language of a statute).

Any hesitance to in effect graft an exception onto Section 234(1) is reinforced by an examination of other states' statutes that are similar to Section 234(1), but avoid the anomalous result in this case. Kansas has a life-insurance notice statute that prevents forfeiture "without first giving notice in writing to the *policyowner* of such policy of its intention to forfeit or cancel the same." KAN.STAT. ANN. § 40–410 (emphasis added). The Kansas statute continues: "When the policyowner is other than the insured, the company, *upon specific written request by the insured to the company* ... shall thereafter furnish the insured a duplicate of any notice required to be sent to the policyowner hereunder." *Id.* (emphasis added). New York's notice statute has evolved from a provision almost identical to Section 234(1) to one that in all likelihood would release the life insurance company under these facts. New York's old law directed: " 'No life insurance corporation doing business in this State shall within one year after the default in payment of any premium ... declare forfeited or lapsed, any policy, ... nor shall any such policy be forfeited, or lapsed, by reason of nonpayment when due of any premium ... unless a written or printed notice stating the amount of such premium ... due on such policy, the

place where it shall be paid, and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured .... at his or her last known post-office address in this State, postage paid by the corporation ... at least fifteen and not more than forty-five days prior to the day when the same is payable.'" *Wolarsky v. New York Life Ins. Co.,* 120 App.Div. 99, 100, 104 N.Y.S. 1047, 1048 (1907) (quoting New York Ins. Law § 92, 1892 N.Y.Laws 1930, ch. 690, 1897 Laws 91, ch. 218). The present version still requires notice, but stipulates that "[t]he notice required ... be duly mailed to the last known address of the person insured, *or if any other person shall have been designated in writing to receive such notice, then to such other person.*" N.Y.Ins.Law § 3211(b) (emphasis added). These other states' statutes magnify the fact that the Illinois Legislature's choice of wording is just that—a choice, and one that, absent contrary guidance from Illinois state law, the court must respect.

### 2. *Interpretive Guidance*

A federal court that sits, as here, in diversity must turn to state law sources of interpretive guidance where available when interpreting a state statute. *See Barger v. Indiana,* 991 F.2d 394, 396 (7th Cir.1993). Here the court looked to two such sources— legislative history and Illinois cases.

Section 234(1) was enacted as part of the Illinois Insurance Code of 1937. Legislative history for Illinois statutes that old is often bare to nonexistent, and that generality applies to Section 234(1). The committee comments for the section shed no light. Nor was the subsequent history of Section 234 helpful. Neither the 1953 nor 1961 amendments of the section expose legislative intent on the instant issue. *See* 1953 Illinois Laws 1265, § 1; 1961 Illinois Laws 3852, § 1. The court found no helpful legislative history, nor did either party cite any.

More fruitful is the court's reading of Illinois case law interpreting Section 234(1). No Illinois case directly answers whether Section 234(1) prevents forfeiture here where the owner of the policy is different from the insured. However, the reasoning of two Illi-

nois Appellate Court cases leads to the conclusion that under the specific facts before the court Section 234(1) cannot be invoked by Clarin to reinstate the policy on Hammond, the insured.

The first such case is *DC Electronics, Inc. v. Employers Modern Life Co.,* 90 Ill.App.3d 342, 45 Ill.Dec. 690, 413 N.E.2d 23 (1st Dist. 1980). That case also involved a policy on an employee, in which the employer was owner and beneficiary. The employer, prosecuting a declaratory judgment action, argued that the insurance company failed to notify the employer or the employee that the contract of insurance was about to expire, and that a premium was due to renew the policy. Reversing the trial court, the appellate court held such notice to the owner was required by Section 234(1). The court held that "proper statutory notice [under Section 234(1)] should have been given by Employers [the insurance company] to DC [the employer] prior to the effectuation of a lapse." *Id.* at 348, 45 Ill.Dec. at 695, 413 N.E.2d at 28.

Therefore, the *DC Electronics* court read Section 234(1) as imposing a requirement of notice to the owner/beneficiary. It follows that under the *DC Electronics* facts, very similar to these, proper Section 234(1) notice to the owner/beneficiary would have been sufficient.

Similar conclusions can be drawn from *Bellmer v. Charter Security Life Insurance Co.,* 140 Ill.App.3d 752, 94 Ill.Dec. 945, 488 N.E.2d 1338 (4th Dist.1986), another Section 234(1) case. There, the insurance company had been granted summary judgment against claims by the owner of a policy that she was entitled to notice before forfeiture. Reversing, the court discussed the fact that unlike some other state statutes, Section 234(1) "failed to expressly include the term 'owner of the policy,' when different from 'the person whose life is insured' or his 'assignee.'" *Id.* at 756, 94 Ill.Dec. at 948, 488 N.E.2d at 1341. The *Bellmer* court then took note of Illinois Insurance Code § 245.1. Section 245.1 provides: "No provision of the Illinois Insurance Code, or any other law prohibits an insured under any policy of life insurance ... from making an assignment of all or any

part of his rights and privileges under the policy...." 215 ILCS 5/245.1. The *Bellmer* court read these two code provisions together, viewing Section 234(1) rights as assignable to a policy owner. Indeed, the court reasoned Section 234(1), among other factors, indicated who was the "owner and beneficiary of the policies," and that the owner and beneficiary "was entitled as such to notice in her own right." The court's conclusion: "Here the statute [Section 234(1)] expressly vests the person whose life was insured or his assignee with an enforceable right to certain notice; the application and the policy issued thereon vested this right in ... the owner." *Id.* at 760, 94 Ill.Dec. at 950, 488 N.E.2d at 1343.

It becomes clear, then, that Hammond's Section 234(1) rights could be vested in Clarin, the owner.[4] The question remaining is whether they were, which the court answers in the affirmative.

The fact that the policy application indicates that premium notices are to be sent to the owner is one clue. But more explicitly, the policy states: "During the lifetime of the insured, the Owner alone has the right to receive all benefits and to exercise all rights provided in the policy." (Complaint ex. B) As noted above, in *DC Electronics* there was such a clause. Furthermore, the *Bellmer* case means such an assignment clause was effective for Section 234(1) rights. The court therefore holds that under these facts Section 234(1) notice directed to Clarin was sufficient, and that therefore defendant is entitled to summary judgment as to Count I.[5]

## II. Count II: Penalties and Attorneys' Fees

Clarin's second count requests first that the court award attorneys' fees pursuant to Section 155 of the Illinois Insurance Code.

215 ILCS 5/155. Magistrate Judge Guzman recommended that this request be denied. Of course, since plaintiff today loses on the merits, it is not entitled to Section 155 fees. Similarly, plaintiff's request in Count II for prejudgment interest is mooted. Accordingly, the court grants defendant summary judgment as to Count II.

## CONCLUSION

The court adopts in part and does not adopt in part Magistrate Judge Guzman's Report and Recommendation. Plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. Judgment entered on behalf of defendant and against plaintiff.

---

**4.** It is not problematic that the guiding case law is from Illinois appellate courts rather than the state's highest court. First, there is no split in the districts; the court read no Illinois cases urging a different result from this one. Second, the court is persuaded by the reasoning of the appellate court cases; this is hardly a situation where the court is compelled to a result with which, had it the authority, it would disagree.

**5.** By this stage there is no real dispute that the above legal conclusion ends this case. The timing and technical requirements of Section 234(1) notice were apparently fulfilled by Massachusetts General; the only question was whether the notice was sent to the right place, and the court holds it was. The above conclusion also means that the court need not reach questions of waiver and agency, which were found by Magistrate Judge Guzman to be disputed issues of fact.